## MARTIN and others *v.* HAUSMAN and others.

*(Circuit Court, W. D. Missouri, W. D.    October Term, 1882.)*

1. ASSIGNMENT FOR BENEFIT OF CREDITORS.

 Under the laws of Missouri every voluntary assignment by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors of the assignor in proportion to their respective claims; but a mere deed of trust or mortgage for the security of certain debts therein named is not an assignment, and will only inure to the benefit of such creditors as are secured thereby.

2. SAME—ASSIGNMENT AND SECURITY DISTINGUISHED.

 An assignment differs from a mere security for a debt in passing both the .egal and equitable title to the property to the assignee *absolutely,* beyond the control of the assignor, to be sold for the payment of debts, leaving no equity of redemption; and as the deed in this case has that effect, it must be considered an assignment for the benefit of *all* the creditors, and not a mere deed in trust to secure the debtors therein named.

*Botsford & Williams* and *Henry Wellman,* for plaintiffs.

*Tichenor, Warner & Dean,* for defendants.

KREKEL, D. J.    This action was commenced in the circuit court of Jackson county, Missouri, and removed by the complainants to this court.    The bill alleges that plaintiffs are creditors of Stiefel & Ney; that the latter were engaged in business at Kansas City, Missouri, prior to August 2, 1882, as wholesale dealers in liquors and cigars; and that on the date above set forth they executed to the defendant Hausman a certain deed of trust which is called "a deed of assignment," and is in the following language:

 "This deed, made and entered into this first day of August, 1881, by and between Edward Stiefel, Solomon Stiefel, and Isaac Ney, constituting the firm of Stiefel & Ney, of Kansas City, Missouri, party of the first part, and Gustave Hausman, party of the second part, and the Anheuser-Busch Brewing Association, and the Bank of Kansas City, Missouri, parties of the third part, witnesseth, that the said parties of the first part, in consideration of the debt and trust hereinafter mentioned and created, and of the sum of one dollar to them in hand paid by the said party of the second part, the receipt of which is hereby acknowledged, do by these presents sell, assign, transfer, and set over to the said party of the second part the following-described personal property, in the county of Jackson and state of Missouri, to-wit: The entire stock of liquors, cigars, and tobacco in the store of the grantors herein, at Nos. 602 and 604 Delaware street, in Kansas City, together with the fixtures, safe, desks, chairs, furniture, stoves, horses, wagons, and each and every thing now used in and about the store aforesaid where the said Stiefel & Ney have been carrying on the business of wholesale liquor dealers, intending hereby to embrace the entire stock of said business, with everything used in connection

therewith: To have and to hold the same, with the appurtenances, to the said party of the second part, in trust, however, for the following purposes: Whereas, the said Stiefel & Ney, as such wholesale liquor dealers, have bought goods from time to time from the Anheuser-Busch Brewing Company, and are now indebted to them in the sum of thirty-two thousand seven hundred and twenty seven 85-100 dollars, ($32,727.85,) and are indebted to the Bank of Kansas City in the sum of twelve thousand eight hundred and forty-one dollars, ($12,841,) and which consists of two notes, each for the sum of $5,000, and due, one on August 8, 1881, and the other on August 11, 1881; and the balance of said indebtedness consists of an overdraft of $2,841 due on demand; the said indebtedness to said Anheuser-Busch Brewing Company consists of 20 notes and the balance in open account: Now, to secure the payment of said indebtedness to said Anheuser-Busch Brewing Company and to said Bank of Kansas City, this deed is made, and the property herein assigned, transferred, and sold is this day delivered into possession of the said party of the second part, and he, the said party of the second part, shall hold the same for the purpose herein provided. The said party of the second part shall keep the said property fully insured, and shall proceed at once to realize from said property at either public or private sale, for cash, keeping an accurate account of all goods so sold, and the amount realized therefrom, as well as all expenses incurred in and about taking care of and selling said property; and out of the proceeds of such sales he shall pay, first, the costs and expenses, and the balance shall be applied *pro rata* upon the said indebtedness, as it shall mature, until the whole shall be paid; and when such has been fully paid, then this deed shall be released at the cost of said parties of the first part. Said party of the second part shall not sell said goods at private sale for less than their market values, and if sold at public sale, 20 days' notice thereof shall first be given, by advertisement, in two of the daily papers published in Kansas City, Missouri, and within four months from this date, at either private or public sale, said property shall be disposed of, or so much thereof as may be necessary to pay off the said debts hereby secured, with interest and costs.

" Witness our hands and seals, the day and date written.

> "EDWARD STIEFEL.  [Seal.]
> "SOLOMON STIEFEL.  [Seal.]
> "ISAAC NEY.  [Seal.]"

This deed was acknowledged and recorded on the day of its execution in the office of the recorder of deeds of Jackson county, Missouri. It further appears from the recitals in the bill that Hausman immediately took possession of the stock in trade and other property conveyed to him by said deed, and that the value thereof was, at the date of the execution of the deed, $75,000. It is alleged therein that said conveyance is an assignment for the benefit of all the creditors of said Stiefel & Ney, and that said Hausman has refused to recognize it as such an instrument, and failed to perform any of the stat-

utory duties imposed upon him as assignee in cases of assignment for the benefit of creditors. It is also stated in the bill that he has refused to recognize the rights of any of the other creditors of Stiefel & Ney, but that, after selling the property described in the deed, he has paid in full the indebtedness due to the Bank of Kansas City and the Anheuser-Busch Brewing Association; that after paying these two creditors in full there is still left the sum of $10,000, which he retains for his costs, charges, and compensation as trustee; that said trustee has always, from the time of accepting said trust, denied the rights of any of the creditors of Stiefel & Ney, excepting the two named in the deed, to any benefit of said conveyance, or to receive any payment of their debts or claims, or any part thereof, from said trust property or the proceeds thereof, and has neglected and refused to execute said trust as required by the law relating to assignments, or to perform all or any of his duties as trustee thereunder; that he has refused to file an inventory, or to cause the goods and effects conveyed to him to be appraised, or to execute any bond for the faithful discharge of his duties as an assignee, or to fix the time and place for adjusting and allowing demands against the estate of said Stiefel & Ney, as insolvents under the assignment law, or to give any notice thereof, or to adjust and allow any demands against said estate, or to pay any such demands in proportion to the amount of each, or in any manner to execute or perform said trust as in cases of assignments.

It is further alleged that Hausman is insolvent, and has parted with all the property except said sum of $10,000; and said Bank of Kansas City and said Anheuser-Busch Brewing Association refuse to account to the other creditors of Stiefel & Ney for the money they have received from said trustee, or any part thereof; that said Stiefel & Ney are indebted in large sums to creditors unknown to the complainants; and this action is commenced for the benefit of so many of said creditors as may join therein, as well as the complainants themselves. The prayer for relief is that the court declare said deed to be for the benefit of all the creditors of said Stiefel & Ney, in proportion to their respective claims; that Hausman be removed from his trust as trustee, and another trustee appointed, and that he be compelled to account for all the sums of money and property he received under said deed of trust, and he pay over and deliver the same to the trustee to be appointed; that the Bank of Kansas City and the Anheuser-Busch Brewing Association be compelled to account for all the money or property they have received from said Hausman, and

pay the same over to said new trustee, and that the same be distributed among the creditors of said Stiefel & Ney, according to their respective rights as in cases of assignments. To this bill defendants file separate demurrers, alleging that the bill shows no cause of action ; that improper parties are joined; and that it is an attempt to resort to equity to collect a debt.

The main question to be determined is the character of the instrument by which Stiefel & Ney conveyed their stock in trade to Hausman; the plaintiffs claiming it to be an assignment, and as such coming within the provisions of the statute of Missouri providing that every voluntary assignment by a debtor to any person in trust for his creditors shall be for the benefit of all the creditors of the assignor, in proportion to their respective claims; the defendants claiming it to be a deed of trust or mortgage for the security of the debts therein set out. At common law an insolvent debtor could prefer one creditor over another; make full or partial payments to one or more, leaving others unpaid. This right was recognized by the supreme court of Missouri long before the legislature undertook to regulate assignments. The right of making preferences is assumed in the first legislation of Missouri on the subject of assignments, which occurred in 1841. The act of February 15th of that year required the filing of inventories or schedules of the estate and effects assigned, with the clerk of the circuit court, within 30 days after the execution thereof, unless longer time was allowed by the judge of the court; made provisions for appraisements, and the giving of bond by the assignee. There are also provisions in the act giving the court control and jurisdiction over the assignee. The law as originally enacted, somewhat expanded, passed into the Revisions of 1845 and 1855. In the latter act the powers of the court over the assignee and the control of the property is enlarged, and a new section added (39) which is as follows :

"Every provision in any assignment hereafter made in this state, providing for the payment of one debt or liability in preference to another, shall be void; and all debts and liabilities within the provision of the assignment shall be paid *pro rata* from the assets thereof."

Questions arose as to whether this provision did not do away with all preferences in assignments, but the supreme court determined that they were still legal, and that the effect of this section was to do away with preferences among creditors named in the assignments who were to be paid *pro rata*. *Shapleigh* v. *Baird*, 26 Mo. 322. In

deciding this case Judge NAPTON, who delivered the opinion of the court, uses arguments which, when taken in connection with the legislation which followed, is not without significance. He says:

"Allowing partial assignments still to be valid, as they were previous to its enactment, the section (39) abolishes all provisions in such assignments which give preferences among the creditors selected, and requires the assignee to treat such provisions as nullities and distribute the effects *pro rata*. In cases of a general assignment of all the debtor's property to his creditors, which I presume is the usual and common form of such instruments, this section will accomplish everything that could be desired. It prevents all classification of creditors in such deeds; an evil much complained of, and doubtless within the mind of the legislature. But so long as partial assignments are permitted; and a debtor can transfer his property by such instruments to any portion of his creditors he desires, this section of the Revised Code of 1855 is totally ineffective to prevent preferences among creditors. The enactment may be always evaded by the selection of a single creditor, or any number of creditors sufficient to exhaust the effects assigned. Indeed, if the legislature wish to strike at the root of the evil they must go back to the old principle of the common law, which permits a debtor to prefer one creditor to another. Without, however, undertaking to suggest any views of our own as to the true policy which should prevail, and how far the legislature may with safety go to the abolition of this ancient principle, it is sufficient that the legislature has not yet, in our opinion, abolished the right of debtors to make assignments to a portion of their creditors."

Thus stood the law up to February 13, 1864, when a new section was enacted, which, somewhat amended, afterwards passed into the Revision of 1865, and reads as follows:

"Every assignment of lands, tenements, goods, chattels, effects, and credits made by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors of the assignor in proportion to their respective claims, and every such assignment shall be proven, or acknowledged and certified and recorded, in the same manner as is prescribed by law in cases wherein real estate is conveyed."

This section, carried into the Revision of 1879, is now the law of Missouri.

This new section was passed upon and construed by the supreme court of Missouri in the case of *Crow* v. *Beardsley*, 68 Mo. 435. Beardsley had executed a deed of trust to Kennan to secure him and other creditors named in the conveyance debts not then due. The deed contained the usual provision that if the debts were not paid at maturity the trustee was authorized to sell the property conveyed, and out of the proceeds pay the debts secured. Judge HENRY, delivering the opinion of the court, says:

"Both appellant's and respondent's counsel seem to labor under the impression that the first section of the act in relation to voluntary assignments avoids assignments which give a preference among creditors. We are not inclined to place that construction upon the section. It provides that every voluntary assignment, etc., made by a debtor to any person in trust for his creditors shall be for the benefit of all the creditors of the assignor in proportion to their respective claims; in other words, whether one or more of the creditors be named it shall nevertheless inure to the benefit of all. [Adopting the construction given to the old thirty-ninth section in the statutes of 1855, the court proceeds to say:] Section 1 of the act now in force has a wider scope, and was designed to prevent any preference of creditors whatever by assignments. Nothing in the section indicates that an assignment preferring a portion of the creditors shall be void; but the most reasonable construction of the section is that the assignment shall stand, and shall inure to the benefit of all, as well those not named as those named in the assignment."

In considering the question whether the deed from Beardsley to Kennan was an assignment, or a deed of trust to secure creditors, the court says: "An assignment is more than a security for the payment of debts; it is an absolute appropriation of property to their payment; citing 1 Burrill, Assignm. 12." The conclusion in the case before the court is arrived at that the deed of trust under consideration is not an assignment. Assuming that under the legislation of Missouri, and the construction given to it by the supreme court of the state, failing debtors may still make preferences among their creditors, the question remains, does the instrument under consideration fall within the provisions of the assignment law of Missouri, and inure to the benefit of all the creditors of Stiefel & Ney, whether named or not?

In Burrill, Assignm., it is said:

"An assignment is more than a security for the payment of debts; it is an absolute appropriation of property to their payment. It does not create a lien in favor of creditors upon property which in equity is still regarded as the assignor's, but it passes both the legal and the equitable title to the property absolutely beyond the control of the assignor. There remains, therefore, no equity of redemption in the property, and the trust which results to the assignor in the unemployed balance does not indicate such an equity."

Among the authorities cited is the case of *State* v. *Benoist*, 37 Mo. 500. The conveyance in that case was to trustees, who were to take possession immediately and sell at private or public sale, and pay the creditors therein named. Holmes, J., speaking for the court, says:

"There was some discussion as to whether the instrument in question here was to be considered as a deed of trust in the nature of a mortgage security for a debt, or a partial assignment for the benefit of creditors. It does not

purport to be a security for a debt, with power to sell if the debt be not paid when due. It conveys the property absolutely to trustees, to be sold for the payment of the debts named and preferred in it. It is clearly a partial assignment for the benefit of creditors, and not a mortgage security. *Such instruments have always been treated as assignments.*" 20 Mo. 461; 1 FED. REP. 78.

Looking at the character of the instrument under consideration, and applying to it the distinctions made in instruments of that class by the authorities, it would seem that it must be declared an assignment within the laws of Missouri. The seeming incongruity of allowing preferences and expounding instruments, making them so as to defeat their object, is the result of legislation. At common law, as already stated, a debtor could prefer one or more creditors in whole or in part. The legislature of Missouri, in the act of 1855, limited that right, and, according to the construction given to that act by the supreme court of the state, provided that among those preferred there should be no difference. When the inconsistency of thus discriminating between creditors was pointed out by Judge NAPTON in 1858, the law was amended in 1864 by a new section providing that every assignment in trust for creditors shall be for the benefit of all the creditors of the assignor. Was this intended to prohibit a failing debtor from giving preferences at all? I am inclined to think so, but distinguish between a debtor who, though insolvent, yet hopes to tide over his financial difficulties by securing some of his creditors, while others go unsecured. The instruments by which debts are thus secured do not fall within the provisions of the assignment law, while such as dispose of the whole of the business and the property of the assignor, thereby declaring insolvency, are held to fall within its provisions. A careful examination of the long line of Missouri decisions has led to the conclusion arrived at. This conclusion is also in keeping with the authorities of many of the states, and especially in line with federal legislation and the decisions of its courts thereon. To reiterate, a debtor in Missouri, under its legislation and adjudications thereon, may, though he be insolvent at the time, prefer one or more of his creditors by securing them, but he cannot do it by an instrument conveying the whole of his property to pay one or more creditors. Instruments of the latter class will be construed as falling within the assignment laws, and as for the benefit of all creditors, whether named in the instrument or not. Recognizing as I do both the right and propriety of the courts of a state to construe its laws, an earnest effort has been made to con-

form to the legislation of the state, and the construction given to it, in the conclusion arrived at.

The demurrers will be overruled.

Judge McCrary concurs.