## W. C. JONES et al. v. CHARLES P. KELLOGG & CO.

1. CASE-MADE — *Contents* — *Matters Showable by Extrinsic Evidence.* Where a case has been brought to the supreme court upon a case-made and not upon a transcript, the rulings of the lower court or of the judge thereof complained of and assigned for error must be shown by and embodied in the case-made itself, and they cannot be shown by any other or by extrinsic evidence; but other matters or things to make the case reviewable may generally be shown by extrinsic evidence, or, in other words, by evidence outside of the case-made; and therefore, where it seemed from the face of the case-made that the case was not made and served within the time prescribed by law or by any order of the lower court or the judge thereof, *held*, that it may be shown that the case was in fact made and served within the proper time, by a duly-certified transcript of an order of the judge of the district court showing that the time for making and serving the case had been extended by the judge.

2. ASSIGNMENT — *Valid Deed* — *Preferred Creditors* — *Void Chattel Mortgages.* Where an insolvent debtor, in disposing of his property for the benefit of his creditors, executes chattel mortgages upon some of it to secure the claim of certain preferred creditors, and executes a deed of assignment upon all of it for the benefit of all his creditors, the assignment, however, to be subject to the chattel mortgages, and all this is done at substantially the same time, and as a part of substantially the same transaction, *held*, that the mortgages are void, although the debtor may have previously promised, but without any consideration therefor and without saying anything about mortgages, that he would in case of trouble secure the preferred creditors; and *further held*, that the deed of assignment is entirely valid and takes all the property.

3. POSSESSION — *Prior Rights.* After such deed of assignment was executed, the assignee named therein took the possession of all the property, and afterward delivered the mortgaged property to the mortgagees, all the parties believing at the time that the mortgagees had the prior right thereto. *Held,* That the mortgagees, then being in actual, quiet, peaceable and exclusive possession of the property under a claim of right thereto, had the prior right thereto as against all the world except the assignee or some one holding under him.

4. ATTACHMENT — *Damages* — *Trover.* Where attaching creditors of the original owner of the property afterward caused the property to be attached and taken from the possession of the mortgagees as the

NOTE.— The above is the syllabus of this case, as corrected upon the rehearing thereof, on the 8th day of April, 1893, at the April sitting of the court.

property of the original owner, *held*, that the parties taking such property are mere intruders, wrongdoers, and trespassers, and the mortgagees may afterward, in an action in the nature of trover for the conversion of the property, brought against the officer seizing it, recover as damages the full value of the property.

*Error from Shawnee District Court.*

ACTION brought by *Charles P. Kellogg & Co.* against *W. C. Jones* and *T. W. Thompson,* to recover damages for the alleged wrongful and unlawful seizure of certain merchandise claimed by Kellogg & Co. under a chattel mortgage given to them by one L. B. Townley, of the city of Harper. Judgment for plaintiffs for $5,378, at the April term, 1889. The defendants bring the case to this court. The material facts appear in the opinion.

*B. P. Waggener, D. Martin,* and *J. W. Orr,* for plaintiffs in error:

1. Was this action brought and prosecuted in the court below in the name of the real party in interest? The mortgage of Kellogg & Co. expressly provides that it is subject to the mortgage of Belle M. Townley. A subsequent mortgage conveys only an equitable title in the property, if it conveys anything at all; and it conveys a title subject to the existing rights and equities of the prior mortgagee. *Shoenberger v. Mount,* 1 Handy (Ohio), 566; Jones, Ch. Mortg., § 494; *Pecker v. Silsby,* 123 Mass. 108; *Goodrich v. Willard,* 2 Gray (Mass.), 203–205; *London v. Emmons,* 97 Mass. 37; *Ring v. Nele,* 114 id. 112; *Rigg v. Barnes,* 2 Cush. 591.

There can be no question but that the mortgage to Belle M. Townley vested in her the legal title to the property under the statutes of this state, and gave her the right of possession. *Clapp v. Campbell,* 124 Mass. 52.

Section 26 of the code of civil procedure provides that "Every action must be prosecuted in the name of the real party in interest," etc. Who is the real party in interest in this case, Belle M. Townley or Charles P. Kellogg & Co.? The judgment against the defendant Jones could not be pleaded in

defense of an action brought by Belle M. Townley or her assignees against Jones for a conversion of the property. *Ex parte Polster*, 10 Kas. 204; *Welton v. Deyarman*, 26 Neb. 59; *Clapp v. Glidden*, 39 Me. 448; *Sheldon v. Soper*, 14 Johns. 352; *Kennedy v. Strong*, 14 id. 128; *Corbin v. Kincaid*, 33 Kas. 652; *Ament v. Greer*, 37 id. 650; *Wilson v. Fuller*, 9 id. 192.

2. Do not the circumstances under which the two mortgages and deed of assignment were executed render the mortgages invalid as to attaching creditors? The proposition is not disputed that "a debtor in failing circumstances may prefer creditors, if the same is done in good faith." *Tootle v. Coldwell*, 30 Kas. 125. See, also, *Arn v. Hoerseman*, 26 Kas. 413; *Randall v. Shaw*, 28 id. 419; *Bishop v. Jones*, 28 id. 680.

The facts in *Bailey v. Manufacturing Co.*, 32 Kas. 73, are quite different from the facts in the case at bar. By this deed of assignment or power of attorney, reference is made to the said two mortgages, and the property is put into the possession of Adams, as assignee of and attorney in fact for L. B. Townley, to execute the trust created by the mortgages and the deed of assignment. The deed of assignment, or power of attorney, states the amount of the mortgages, and that the same is subject to the rights of the mortgagees, and shall not conflict or interfere therewith. See *Perry v. Vezina*, 63 Iowa, 25; *Farwell v. Jones*, 63 id. 316; *Patton v. Burr*, 52 id. 521.

The circumstances under which L. B. Townley executed the mortgages and deed of assignment bring the case squarely within the decision of the supreme court of the United States in the case of *White v. Cotzhausen*, 129 U. S. 336–345. He had deliberately made up his mind, as found by the court below, to yield dominion over his property and quit business. "He wanted to put his property in such shape that his creditors would be protected, and not have it eaten up in costs." See, also, *Winner v. White*, 66 Wis. 227; *Harkiaser v. Leidy*, 4 Ohio St. 602; *Dixon v. Rawson*, 5 id. 224; *Burros v. Lehndorff*, 8 Iowa, 96; *Thompson v. Heffner*, 11 Bush, 359; *Kellogg v. Richardson*, 19 Fed. Rep. 70; *Perry v. Corby*, 21 id.

737; *Krebbs v. Ewing*, 22 id. 693; *Norton v. Kearney*, 10 Wis. 443; *Gilman v. Henry*, 53 id. 468; *Herbert v. Low*, 65 id. 316; *Backhaus v. Sleeper*, 66 id. 68; *Berry v. Cutts*, 42 Me. 445.

3. The court committed error in receiving and refusing to strike out the contract of date July 28, 1887. It was delivered to Standish by L. B. Townley. It seems to us that it is not necessary to do more than call the attention of the court to the circumstances under which this paper was delivered. The court below committed an error in receiving it, and committed another error in refusing to strike it out when the circumstances under which it was delivered were made apparent. Without this paper, Kellogg & Co. had no standing in court whatever. It was offered in evidence for the purpose of sustaining a material allegation of the plaintiff's petition; and upon no other theory than that the paper was operative and valid, and transferred to Kellogg & Co. in the interest of Belle M. Townley, could the court below have rendered a judgment against the defendant for $4,600? Without giving effect to the terms and conditions of this paper, Kellogg & Co. had no interest whatever in this controversy, and could not possibly maintain an action to recover damages which the evidence shows they have never sustained.

4. If plaintiffs were entitled to recover, what was the measure of damage? It is well settled that

"One who takes a mortgage in terms made subject to a prior mortgage named acquires only a right to redeem the property from such prior mortgage. . . . The legal effect of such a mortgage is the same as if it had been in terms of the right of the mortgagor to redeem the first mortgage." *Dwight v. Scranton Lbr. Co.*, 36 N. W. Rep. 752; *Howard v. Chase*, 104 Mass. 249; *Tuite v. Stevens*, 98 id. 305. See, also, *Cushing v. Seymour*, 30 Minn. 306, 307; *Becker v. Dunham*, 27 id. 32; *Parish v. Wheeler*, 22 N. Y. 511; *Goulet v. Asseler*, 22 id. 225; *Manning v. Managhan*, 28 id. 585; *Tosp v. Gulseth*, 37 Minn. 135; *Packet Co. v. Robertson*, 13 id. 291; *Dodge v. Chandler*, 13 id. 115; *Treat v. Gilmore*, 49 Me. 39; *Warner v. Vallilly*, 13 R. I. 483; *Hurst v. Coley*, 15 Fed. Rep.

645; *Chamberlain v. Shaw,* 18 Pick. 278; *Spoor v. Holland,* 8 Wend. 445; 24 Am. Dec. 39, note; *Baldwin v. Bradley,* 69 Ill. 32; *Ingersoll v. Vanbokkilen,* 7 Cow. 670; *Clark v. Bell,* 61 Ga. 147; *Sheldon v. Express Co.,* 48 id. 625; *Case v. Heart,* 11 Ohio, 354; *Shahan v. Smith,* 38 Kas. 474; *Dolan v. Van Demark,* 35 id. 309; *Wolfley v. Rising,* 12 id. 535.

*J. D. McFarland,* and *W. C. Webb,* for defendants in error:

Has this court jurisdiction of this case as presented here? We think not. Not a line or word appears in the record stating or showing that the time for making and serving a case was extended beyond the 19th of September, and the case was not in fact served until five days after that time had expired. See *Dunn v. Travis,* 45 Kas. 541.

It is contended by plaintiffs in error that the mortgage under which defendants in error claim is void because of the execution by the mortgagee of the deed of assignment for the benefit of creditors set forth in the findings of fact. In this state it has been expressly held, that under our Kansas statute different instruments made by the debtor to his several creditors, though made at the same time and covering all his property, do not together constitute a general assignment for the benefit of creditors, and do not come within the statute governing voluntary assignments for the benefit of creditors. *Tootle v. Coldwell,* 30 Kas. 125. See, also, *Hargadim v. Henderson,* 99 Mo. 375; *National Bank v. Sands,* 47 Kas. 596.

In order to reverse this case, the court must hold that the special findings of the court below necessarily and unavoidably show affirmatively every fact necessary to be found in order to have the mortgage declared void. The findings of fact do not show that it was the primary purpose to make an assignment. On the contrary, it fairly appears that the primary object of the debtor was to secure certain creditors by mortgage, namely, the defendants in error, because he had promised them he would do so, and his wife; and having done so, to then assign the balance of the property to his other creditors. Clearly, it was not the intention of the debtor in executing the mort-

gages to make them a part of the assignment; nor were they executed pursuant to a plan to make a general assignment with preferences. His intention was, first and primarily, to secure these two creditors. See *Loomis v. Stewart*, 75 Iowa, 387; *Dodd v. Hills*, 21 Kas. 708; *DeFord v. Nye*, 40 id. 665; *Bailey v. Manufacturing Co.*, 32 id. 73; *Hardware Co. v. Implement Co.*, 47 id. 423; *National Bank v. Sands*, 47 id. 596; *Farlin v. Sook*, 30 id. 404; *Root v. Potter*, 59 Mich. 506; *Van Patten v. Burr*, 52 Iowa, 518; *Gilbert v. McCorkle*, 110 Ind. 215.

Kellogg & Co., at the time of the seizure of the goods, were in the actual and exclusive possession thereof under their said mortgage; by virtue of said mortgage, they were entitled to the possession of said property as against the plaintiffs in error, and as against the whole world except the first mortgagee; the first mortgagee, prior thereto, had agreed with them that they might take possession; prior to the commencement of this suit, the first mortgagee had executed to them an agreement whereby, as to them, she waived her right and claim under her first mortgage, and agreed that their rights under their mortgage should be prior to hers.

The question now to be determined is simply, whether the defendants in error, under the facts of this case, can maintain an action against the plaintiffs in error for damages for taking and converting the mortgaged property in the manner and under the circumstances appearing in the case. In the case at bar, the defendants in error were in the actual and exclusive possession of the property at the time it was seized. Not only were they in the actual and exclusive possession, but they were entitled to such possession as against the whole world—against every one except the first mortgagee by virtue of their mortgage, and against her under the terms of their agreement with her. Such being the fact, there can be no question as to their right to maintain the action. And beyond this the subsequent agreement made before the commencement of the action placed them in the same situation with respect to the matter as though their mortgage as to the

goods in controversy had been executed prior to that of Belle M. Townley.

The cases cited by counsel for plaintiffs in error in support of their contention, which were actions in trover, all go upon the ground that the plaintiff, not being in possession and not being entitled to the possession of the property, could not maintain that form of action. The cases appear to turn on the statute and practice in Massachusetts, and are not applicable to this case.

There can be no question that Kellogg & Co. were entitled to recover the amount for which judgment was given. They were not only in possession and responsible over to the first mortgagee by operation of law, but they were in possession under an agreement with the first mortgagee which in and of itself made them responsible over to her for her interest in the property. The plaintiffs in error were strangers to her interest and did not claim to have succeeded to her rights in the property, and were not entitled to her interest or the value thereof in the property, and under no circumstances ever could be. We submit that, without the agreement of December 3, Kellogg & Co. were entitled to recover the amount for which judgment was given, but by that agreement and the acts under it a responsibility over was created, if it did not exist before by operation of law. See *White v. Webb*, 15 Conn. 302; *Walsh v. Adams*, 21 Wend. 125; *Wheeler v. McFarland*, 10 id. 318; *Waddell v. Cook*, 2 Hill, 47; *Frisbee v. Langworthy*, 11 Wis. 375; *Warren v. Kelley*, 80 Me. 533; *Bank v. Farmer*, 5 Dak. 285; *Straw v. Jenks*, 43 N. W. Rep. 941; 1 Sedg. Dam., § 81.

Did the court err in admitting or refusing to strike out the agreement dated July 28, 1887, between Kellogg & Co. and Belle M. Townley, whereby she waived her right to a first lien, and consented that the lien and claim of Kellogg & Co. should take precedence over hers as to the property in dispute? Upon the trial in the court below, Kellogg & Co. produced this agreement, and, having proved the signature, offered it in evidence, and it was received in evidence.

Plaintiffs in error claim that the agreement ought not to have been received in evidence until it was shown by proof that it had been delivered to Kellogg & Co. This was not necessary. The possession of the agreement, and its production, with proof of the genuineness of the signature, was *prima facie* evidence of delivery. 2 Greenl. Ev., § 297; 5 Lawson, Rights, R. & P., p. 3808, and cases cited.

The writing was properly received in evidence. Did the court err in refusing to strike it out? It did not, unless there was competent evidence sufficient to overcome the *prima facie* showing that the instrument had been delivered. It was shown that the paper was delivered to Kellogg & Co. by L. B. Townley. There was no evidence to show that L. B. Townley was wrongfully in possession of the paper. The presumption is that he was in possession by authority of Belle M. Townley. Ewell's Evans's Agency, 433. Kellogg & Co. had sent the agreement to Sisson, for the purpose of having him procure it to be executed by Belle M. Townley and returned to them. There is nothing whatever to show that the paper came wrongfully or illegally into the possession of Kellogg & Co.

The opinion of the court was delivered by

HORTON, C. J.: This case was brought to this court from the district court of Shawnee county, upon a petition in error and a case-made for the supreme court; and the first question presented by either party is, whether this court has any jurisdiction to hear and determine the case. The case was properly settled and signed by the trial judge, and was properly attested by the clerk and the seal attached; but it is nevertheless claimed by the defendants in error, plaintiffs below, that such judge had no power or jurisdiction to settle or sign the same; and this for the plausible reason that it is not shown that the case was made and served upon them within the time prescribed by law, or by any order of the district court or the judge thereof. It appears from the record and papers brought to this court, that, after the trial in the court be-

low, a motion was made by the defendants below, plaintiffs in error, for a new trial and overruled on June 10, 1889, and 60 days thereafter were given to the defendants below within which to make and serve a case for the supreme court. On August 5, 1889, the time for making and serving the case was extended to September 19, 1889; and on September 16, 1889, the time for making and serving the case was still further extended for 30 days from September 19, 1889; and the case was made and served by counsel for the defendants below on counsel for the adverse party on September 24, 1889; and it was duly settled and signed by the judge of the district court and properly attested by the clerk thereof on November 17, 1889, the parties on both sides being present. There is no claim now made that the case was settled or signed prematurely, but really the only claim of irregularity now made is, that the case was not served upon the adverse parties within the time prescribed by law, or as fixed by any order of the judge of the district court; and the ground upon which this claim is made is, that the order of the trial judge, made on September 16, 1889, extending the time for making and serving the case for 30 days from September 19, 1889, is not incorporated in the case as settled and brought to this court, and, therefore, that it cannot be considered by this court. A regular certified copy of such order, however, on a separate piece of paper, has been brought to and filed in this court, and was presented to this court at the time of the hearing of the case. Besides, the district judge, in settling and signing the case, also certified, among other things, as follows: "Said case was served within the time allowed by me;" and the certificate containing these words, signed by the judge, attested by the clerk and the seal, is the only thing connected with the case-made that shows it was ever settled or signed by the judge. Unquestionably the case was made and served upon the adverse parties within proper time; and unquestionably the district judge had the power, the jurisdiction and the right to settle and sign the same as he did; but it is claimed that, as the case

itself does not show this, and that as the same is shown only by a certified copy of the original order of the district judge extending the time for making and serving the case, and by the certificate of the district judge himself made when he in fact settled and signed the case, along with evidence of the first two extensions in the case-made, it must be conclusively held that the case was not made or served upon the adverse parties within proper time, and therefore that the settling and signing of the case by the district judge was without jurisdiction and a nullity. We would think differently, however. While it has always been held by this court, where the case has been brought to this court upon a case-made and not upon a transcript, that the rulings of the lower court or of the judge thereof complained of and assigned for error must be shown by and embodied in the case itself, and that they cannot be shown by any other or by extrinsic evidence, not even by the certificate of the judge himself, yet we have about as uniformly held that all other matters or things to make the case reviewable may be shown by extrinsic evidence, or, in other words, by evidence outside of the case-made. The decisions, however, of this court upon this subject have seldom been reported, for usually, in overruling a motion to dismiss a petition in error upon the ground that the case upon which it was founded had not been made and served within proper time, or was otherwise irregular, the court has overruled the motion without delivering any written opinion upon the question. The following reported decisions, however, have some application to this case: *Gross v. Funk,* 20 Kas. 655, 656; *Russell v. Anthony,* 21 id. 450; *Farlin v. Sook,* 26 id. 397; *Pierce v. Myers,* 28 id. 364; *Wilson v. Janes,* 29 id. 233, 244, *et seq.; Dunn v. Travis,* 45 id. 541. In the case of *Russell v. Anthony,* supar, the following language was used:

"A case is brought to the supreme court on a petition in error and case-made for the supreme court. Such case-made shows upon its face that the case was settled and signed by the judge of the court below five days before the time had arrived

for so settling and signing such case; and the case-made does not show whether the case was ever served upon the opposite party or his attorney, or whether the opposite party or his attorney had any notice thereof, or whether the opposite party or his attorney was present at the time when such case was settled and signed; but evidence was introduced in the supreme court satisfactorily showing that the case was properly served upon the attorney of record of the opposite party, who then said it was 'all right,' and who was afterward present when the case was settled and signed, and made no objection thereto. *Held*, That such case will be treated as a valid case-made for the supreme court."

In the case of *Farlin v. Sook*, supra, the plaintiff in error was permitted to show by extrinsic evidence that the case was made and served within proper time, although it was not so shown by the case itself, or by any certificate of the judge who settled and signed the same. In the case of *Dunn v. Travis*, supra, it was permitted to be shown by evidence outside of the record that the judge of the district court, when settling and signing the case, was outside of the state, and therefore had no jurisdiction to settle or sign such case. A want of jurisdiction may be shown by extrinsic evidence, even to impeach a judgment. (*Mastin v. Gray*, 19 Kas. 458, *et seq.*, and cases there cited; *Reynolds v. Fleming*, 30 id. 106, 111, and cases there cited.) And certainly, if a judgment of a court of general jurisdiction may be impeached for a want of jurisdiction by extrinsic evidence, and the judgment held to be void upon such evidence, it would seem that any order or judgment of such a court might be sustained and upheld upon a showing of jurisdiction made by the same kind of evidence. We think it has been properly shown

1. Case-made—
contents—
matters show-
able by ex-
trinsic
evidence.

in this case that the case brought to this court was made and served within proper time, and that it was properly settled and signed by the judge of the district court, and therefore the motion of the defendants in error to dismiss the case from this court will be overruled; and we shall now proceed to consider the case upon its merits.

It appears that, during the month of November, 1886, L.

B. Townley, who resided at Harper, in Harper county, was engaged in the mercantile business at that place, and at Norwich, in Kingman county, having a general stock of goods and merchandise at each place, and of the aggregate value of about $15,000. A large number of persons constituting the partnership firm of Charles P. Kellogg & Co. were then and are still merchants engaged in the wholesale clothing business in the city of Chicago. At that time Townley owed Charles P. Kellogg & Co. about $4,783.47. On November 17, 1886, C. H. Hunt, an agent of such firm, demanded payment of the amount from Townley, and also demanded security. Townley did not pay the amount, nor any part thereof, but agreed with Hunt that in case of any trouble he would secure the firm's claim; and on the same day Hunt employed Sam. S. Sisson, an attorney at law at Harper, to attend to and protect the firm's claims and interests, and get security from Townley in case any trouble should arise; and he communicated Townley's agreement to Sisson. Afterward, and on November 29, 1886, Townley executed two chattel mortgages upon his said two stocks of goods and merchandise, and a general assignment of all his property, as follows: First, a chattel mortgage upon his two stocks of goods to Belle Mevy Townley, his wife, to secure an indebtedness to her of $6,800; second, a chattel mortgage upon his two stocks of goods to Charles P. Kellogg & Co., to secure his aforesaid indebtedness of $4,783.47 to them, subject, however, to the first mortgage to Mrs. Townley; third, a general deed of assignment to Alf. H. Adams of all his property for the benefit of all his creditors, the assignment, however, to be subject to both the foregoing mortgages. The court below, with regard to the execution of these mortgages and this assignment, found, among other things, as follows:

"That the circumstances attending the execution of said mortgages and deed of assignment were as follows: On the evening of November 28, 1886, L. B. Townley went to the office of Sam. S. Sisson, an attorney, and told him that he had heard rumors that his creditors were threatening to attach his

(Townley's) stock, and he wanted to put his property in such shape that his creditors would be protected, and not have it eaten up in costs. After discussing the matter, Townley asked Sisson to draw the mortgage on said two stocks of goods: First, to secure the debt of his wife of $6,800; second, a mortgage to Charles P. Kellogg & Co., on the same property, to secure their claim of $4,783.47; and third, a general deed of assignment to one A. H. Adams; that thereupon said Sisson drew the aforesaid mortgage to Belle M. Townley, his wife, to secure said sum of $6,800, and thereupon L. B. Townley executed the same; and thereupon and immediately afterwards said Sisson drew the aforesaid mortgage to Kellogg & Co., to secure their claims of $4,783.47, and thereupon L. B. Townley executed that mortgage; and immediately afterwards said Sisson drew the aforesaid deed of assignment, which said Townley then executed. All of said papers were left in possession of said Sam. S. Sisson until next morning. On the next morning, November 29, 1886, said Sisson sent for A. H. Adams, the assignee named in said deed of assignment, who arrived at Sisson's office about 5 o'clock in the morning and met L. B. Townley and Sisson there. Adams was informed of the assignment, and was asked if he would accept. He replied that he would, and thereupon signed a written acceptance of the trust, and indorsed, as appears on the copy of said deed. Thereupon said Sisson handed said papers to said Adams in the following order: First, the mortgage to Belle M. Townley; second, the mortgage to Kellogg & Co.; third, the deed of assignment; and requested and instructed said Adams to take them to Anthony, Kas., and have them filed for record in the order in which he had them handed to him, to wit: First, the mortgage to Belle M. Townley; second, the mortgage to Kellogg & Co.; and third, the deed of assignment. At the time said Adams was asked to accept said trust, and had him sign the acceptance, he had no actual knowledge of the execution of said mortgages, but did have such knowledge immediately thereafter when the papers were handed to him."

The mortgages and deed of assignment were properly filed for record, and Adams, the assignee, took the possession of all the mortgaged and assigned property, and held it all until December 7, 1886. Afterwards, various attachments were issued from the circuit court of the United States and the dis-

trict courts of Harper and Kingman counties, and all the mortgaged property was taken on such attachments from Charles P. Kellogg & Co. A portion of the mortgaged property is now the subject of this controversy. That portion which is now in dispute was a part of the stock of goods kept at Harper. On December 16, 1886, it was taken upon two writs of attachment issued from the United States circuit court in favor of two different plaintiffs and against Townley, and it was taken by W. C. Jones, the United States marshal, and T. W. Thompson, a deputy United States marshal, and the portion thus taken was of the value of $4,600. About July 28, 1887, Mrs. Townley executed an instrument in writing to Charles P. Kellogg & Co. in substance giving to their mortgage priority, and giving to them the prior rights in and to the mortgaged property. There is some question as to whether this instrument was ever properly delivered to Charles P. Kellogg & Co. or not. On January 10, 1888, Charles P. Kellogg & Co. commenced this present action in the district court of Shawnee county against W. C. Jones and T. W. Thompson for $7,000, as damages claimed to have resulted from the alleged wrongful and unlawful seizure of the property by Jones and Thompson. The case was afterwards tried before the court without a jury, and the court made special findings of fact and conclusions of law, and upon such findings and conclusions rendered judgment in favor of Charles P. Kellogg & Co., and against Jones and Thompson, for $4,600, with interest amounting to $778; total, principal and interest, $5,378, and for costs of suit; and the defendants, as plaintiffs in error, bring the case to this court for review.

No real or actual fraud was shown in the case to invalidate either of the mortgages or deed of assignment, or to uphold the writs of attachment under which the defendants below acted; hence the plaintiffs below claim that the mortgages and deed of assignment are unquestionably valid; and that, under their mortgage and their possession, they had the prior right to the property, and that Mrs. Townley came second and the assignee third, and that the defendants below had

no right as against any person whatever; while the defendants below, plaintiffs in error, claim that, as the two mortgages and the deed of assignment were executed substantially at the same time and substantially as parts of the same transaction, they were and are all utterly void; and, therefore, that as they, the defendants below, actually obtained the possession of the property and held the same under the writs of attachment, they had the better right to the property, whether there was any real or actual fraud or not to invalidate the mortgages and the assignment, or to sustain and uphold their attachments. While there is nothing to show that any real or actual fraud intervened, yet it is the opinion of this court, from the findings and the evidence, that the mortgages and the deed of assignment were executed at substantially the same time, and as parts of substantially the same transaction. They were all drawn up the same day, to wit, November 28, 1886, were all dated the same day, to wit, November 29, 1886, and were all executed in pursuance of a single determination formed by Townley to execute them; and this determination was not entertained by him until the day on which they were drawn up to be executed; and, therefore, under the following decisions, both the mortgages and the attachment must be held to be absolutely and entirely void, and the assignment to be absolutely and entirely good and valid; and the assignment must be held in law to take all the property in dispute as well as all the other property attempted to be mortgaged or assigned, and leaving nothing for either the mortgages or the writs of attachment to operate upon. The writs of attachment were themselves valid on their face, but did not run against Adams, the assignee, nor against Mrs. Townley or Charles P. Kellogg & Co., the mortgagees, but did run against Townley, the person who had formerly owned the property. The decisions above referred to, with reference to assignments, mortgages, and attachments, are the following: *Hardware Co. v. Implement Co.,* 47 Kas. 423; *Watkins National Bank v. Sands,* 47 id. 591; *National Bank v. Sands,* 47

2. Assignment— valid deed— preferred creditors — void chattel mortgages.

id. 596; *Brigham v. Jones,* 48 id. 162, decided June 11, 1892, upon a rehearing. There are some distinctions which might be observed between this case and those above cited, but it is not thought by this court that they require comment.

It is claimed by the defendants in error, plaintiffs below, that the mortgage given to Charles P. Kellogg & Co. was not given by Townley of his own volition and unsolicited, as were the mortgages mentioned in the cases above cited, but were given because of importunities, demands and active vigilance on the part of Charles P. Kellogg & Co., through their agents, in attempting to collect their claim or to obtain security thereon, and because of a promise on the part of Townley, the debtor, made several days before the execution of the mortgage, and before the assignment was contemplated, to give security upon the claim if trouble should arise. These things are not thought by this court to be material, however, for the reason, among others, that no intention was really formed by Townley to execute any mortgage to Charles P. Kellogg & Co. until the intention was also formed by him to execute a general deed of assignment for the benefit of all his creditors. When the mortgage was executed, it was not the carrying out of an agreement previously entered into between the parties, upon a new and sufficient consideration passing at the time when the agreement was made, and an agreement intended to be fulfilled by one of the parties in executing a mortgage to the other, but it was simply the carrying out of an intention formed at the very time that another intention was also formed, to execute a general deed of assignment. It does not appear that anything was said prior to this time with regard to mortgages, or that any new consideration passed for the mortgages; hence, as before stated, the mortgages must be considered as void. If the mortgages were valid, of course the plaintiffs would be entitled to recover in this action; but considering them as void, then what are the plaintiffs' rights? With the views that we have already expressed that the deed of assignment is the only valid instrument or thing upon which the property in dispute could be lawfully taken or held,

and that it is wholly valid, and that under it all the property attempted to be assigned or mortgaged or afterward attached should be held, and that the mortgages and the attachments are all absolutely and utterly void and can legally take nothing nor affect any rights, it would seem that the same result would follow, for the rights of Kellogg & Co. would still be prior, superior and paramount to those of Jones and his deputy. Kellogg & Co., at and prior to the time when Jones and his deputy seized the goods and took them from the possession of the plaintiff below, had the exclusive possession thereof, with a claim of absolute right thereto, and with the consent of the only person in the world, the assignee, who had any lawful right to the possession thereof, and who surrendered it to them to secure the payment of just debts, while Jones and his deputy at that time, in seizing the property and taking it away from the possession of the plaintiffs, were mere intruders, wrong- doers, and trespassers. Kellogg & Co's. possession, with their claim of right, was good as against the claims of all the world except those of the assignee, Adams, and no one else had any right to disturb their possession. Indeed prior possession with a claim of right is title. In the case of *Hubbard v. Lyman*, 8 Allen (90 Mass.) 520, which was an action in the nature of trover for the conversion of a quantity of tobacco, the following was decided:

4. Attachment—
damages—
trover.

3. Possession—
prior rights.

"An attachment upon a writ against an insolvent debtor, of property which belonged to him before his insolvency, will render the attaching creditor and others who take the property under the attachment liable, as for a conversion, to one who was in possession of it at the time of the attachment under a claim of title."

Judge Hoar, in delivering the opinion of the court in this case, used the following, among other language:

"The plaintiff was in possession of the property when it was taken from him by the authority of the defendant; and he held it under a claim of title. He can maintain his action,

therefore, unless the defendant can show a better title. The
only title set up by the defendant is as a creditor of William
Brown, under an attachment of the tobacco as Brown's prop-
erty. But it is very clear that the property was not Brown's
at the time of the attachment, because all his right in it had
passed by the assignment in insolvency to his assignee. If
the plaintiff's possession was not lawful, the assignee in insol-
vency was the only party entitled to call him to account.
These considerations are decisive of the case."

The case of *Krewson v. Purdom* was an action in the nature
of trover for the conversion of certain wood. The case was
taken to and decided by the supreme court of Oregon three
different times. (11 Ore. 266, 13 id. 563, 15 id. 589; 3 Pac.
Rep. 822, 11 id. 282, 16 id. 480.) It appears that in that
case Krewson, the plaintiff, did not by any competent evidence
show any better title in himself than mere actual possession
with a claim of ownership. The property in fact, it would
seem, belonged to Gotardi & Co. The defendants, Purdom
and Slocum, were the sheriff and deputy sheriff of the county,
and they levied a writ of attachment upon the property as the
property of Maria & Co., but they were unable to show that
the property belonged to Maria & Co. It was finally and in
the last decision held that the plaintiff's possession was suffi-
cient to enable him to maintain the action as against any mere
intruder for converting it, and that the defendants were mere
intruders; and the judgment, which had previously been ren-
dered in the lower court in favor of the plaintiff and against
the defendants, for the value of the property, was sustained and
affirmed. See, also, the following cases: *Pomeroy v. Smith*,
17 Pick. 85; *O'Brien v. Hilburn*, 22 Tex. 616; *Lowremore v.
Berry*, 19 Ala. 130, same case, 54 Am. Dec. 188; *Bliss v.
Winslow*, 80 Me. 274, same case, 6 Am. Rep. 195; *Schley v.
Lyon*, 6 Ga. 530; and the decision hereafter cited and re-
ferred to.

This present action is in the nature of trespass *de bonis
asportatis* and of trover, and authorities with respect to either
of these actions may be applicable to this. Mr. Lawson, in

his work on Rights, Remedies, and Practice, (vol. 7, § 3664,) uses the following language:

"Possession alone is sufficient to enable one to bring trover; the defendant cannot defend by showing that the title to the chattels is in a third person."

Many authorities are cited in support of this proposition. Mr. Freeman, in his note to the case of *Harker v. Dement*, 52 Am. Dec. 678, 9 Gill, (Md.) 7, uses the following language:

"One entitled to the present possession of chattels may recover in trover against a mere stranger or wrongdoer the full value thereof, with interest from the time of conversion; but against the general owner, or those claiming under him, such plaintiff can recover only the value of his interest, and if the value of his interest equal or exceed the value of the chattel converted, then to the extent of the value of such chattel only."

Mr. Wait, in his work on Actions and Defenses, (vol. 6, p. 216,) uses the following language:

"It is said in some of the cases, and laid down as a rule in some of the text-books, that a person must have a general or a special property in the property sought to be recovered for, but this can hardly be admitted. It is true that a general or a special owner may maintain the action when they are entitled to the possession of the property instanter, but it is also true that a person having no property interest therein may, in certain cases, maintain the action also. Mere naked possession, as against one holding no better title, is sufficient; if the property is wrongfully taken out of his possession; (*Cook v. Patterson*, 35 Ala. 102; *Knapp v. Winchester*, 11 Vt. 351; *Carter v. Bennett*, 4 Fla. 283; *Coffin v. Anderson*, 4 Blackf. 395;) and even a person who has acquired possession of the goods by a trespass may maintain the action against one who has taken from his possession without a better right. (Page 216.) . . . Mere naked possession, however acquired, is good as against a person having no right to the possession. (Page 218.) . . . According to the weight of authority in this country, the defendant in trover cannot set up the title of a third person in defense, unless he in some manner connects himself therewith. (Page 221.) . . . In an action against a stranger, he is entitled to recover the value of the property

converted, and holds the balance beyond his own interest for the benefit of the general owner; (*Ullman v. Barnard*, 7 Gray, 554;) and such is the rule in all cases where the plaintiff is liable over to a third party, and the same is true in all cases where the defendant is not entitled to the balance of the value." (Page 223.)

In Cooley on Torts, 444, it is stated:

" It has often been decided that possession alone is sufficient to enable one to maintain the action of trover, and in a leading case, always since recognized as authority, the finder of a jewel was held entitled to bring trover against one who, having taken the jewel for examination, refused to restore it. . . . In this respect, I see no difference between trespass and trover; for in truth the presumption of law is, that the person who has possession has the property. Can that presumption be rebutted by evidence that the property was in a third person, when offered as a defense by one who admits that he himself had no title and was a wrongdoer when he converted the goods? I am of the opinion that this cannot be done." (*Jeffries v. Railway Co.*, 5 El. & Bl. 802.)

In *Weymouth v. Railway Co.*, 17 Wis. 569 (star page), it is held:

"In trover, by the party from whose possession property was taken, the defendant cannot defeat a recovery by showing title in a third person without connecting himself with that title."

In *Harker v. Dement*, supra, the court, in delivering the opinion, say:

"The defendant, having failed to connect himself with the estate of Richard Dement, occupied the position of mere *tort feasor* who had invaded the possession of the plaintiff without authority; and under such circumstances it is very clear that he could not be permitted to prove that the title to the property in dispute was not in the plaintiff, but was at the time of the conversion outstanding in a third party, with whom he had no connection or privity, to defeat the action, or in mitigation of damages. . . . But in an action against a stranger and wrongdoer who has been guilty of an asportation or conversion of the property, the plaintiff is treated as the absolute and unqualified owner of the property, and he is entitled to recover its full value."

In *Knapp v. Winchester*, 11 Vt. 351, it is remarked:

"In the action of trover, possession, whether rightfully or wrongfully obtained, is a sufficient title in the plaintiff as against a mere stranger."

In *Carter v. Bennett*, 4 Fla. 284–355, it is observed:

"It is surely not necessary to quote authority to prove that, in trover, possession, whether rightfully or wrongfully obtained, is sufficient title in the plaintiff as against a mere stranger."

In *Duncan v. Spear*, 11 Wend. 54, it is said that

"Trover may be maintained against a stranger upon mere prior possession, obtained by a purchaser of chattels under a void execution. A defendant in trover cannot set up property in a third person without showing some claim, title or interest in himself derived from such person."

In *Burke v. Savage*, 13 Allen, 408, it is decided that

"Possession of personal property under claim of title is sufficient to entitle the possessor to maintain an action for its conversion against anybody who does not show a better title."

In *Harrington v. King*, 121 Mass. 269, the court, in the opinion, used this language:

"It is a leading principle, that bare possession constitutes sufficient title to enable the party enjoying it to obtain a legal remedy against a wrongdoer. . . . It is settled that a bailee who is responsible over to the owner is entitled to recover the full value of the goods, and that such recovery will be a good bar to an action by the latter."

In *Taber v. Lawrence*, 134 Mass. 94, the action was for the conversion of goods sold by one Pratt to plaintiff. Pratt, before the sale, had made an assignment of his property for the benefit of his creditors. The defendants attached the goods as the property of Pratt. A portion of the goods belonged to Pratt before he made his assignment. Morton, C. J., in delivering the opinion, referring to these goods, says:

"But we are also of the opinion that the ruling was erroneous so far as it related to property which belonged to Pratt

before the insolvency. In trover, possession of the goods, under a claim of title, is sufficient evidence of property as against one who shows no better right. (2 Greenl. Ev. 637; *Burke v. Savage*, 13 Allen, 408.) The only title set up by the defendants is under an attachment of the goods as the property of Pratt. If his assignees are entitled to it under the assignment, the attachment is invalid, and they are the only parties who have the right to call the plaintiff to account. (*Hubbard v. Lyman*, 8 Allen, 520; *Pomeroy v. Lyman*, 10 id. 468.) The defendants show no title to the property, but are mere strangers and trespassers. As against them, the possession of the plaintiff under a claim of right is sufficient evidence of title in him to enable him to maintain this action."

See, also, the following authorities: 1 Suth. Dam. 210; 3 id. 524; *Burke v. Savage*, 13 Allen, 408; *Vining v. Baker*, 53 Me. 544; *Haslem v. Lockwood*, 37 Conn. 500; same case, 9 Am. Rep. 350; *Bartlett v. Hoyt*, 29 N. H. (9 Foster) 317; *Ward v. Wood Co.*, 13 Nev. 44; *Gilson v. Wood*, 20 Ill. 37; *Brown v. Ware*, 25 Me. 411; *Edwards v. Frank*, 40 Mich. 616; *O. & G. S. Rld. Co. v. Tabor*, 13 Colo. 41. Title to personal property can generally be proved only by proof of possession, for, as a general rule, no records or writings of personal-property titles are kept. Title in such cases is usually established by showing who had the original or the prior possession, and then by showing all the changes of possession or transfers from the party holding the original or the prior possession down to the time in question; and prior possession, if no better right is shown in favor of the adverse party, will always prevail. Possession is not only evidence of title, but, as against any person having no better right, it is title itself. (20 Vin. Abr. 278.) "The general rule is, that possession constitutes a sufficient title against every person not having a better title." (Broom, Leg. Max. 638.) "Possession is a right of property against all the world but the owner." (Cobbey, Replevin, § 136, and cases there cited.) This is true even with respect to real estate. (*Mooney v. Olsen*, 21 Kas. 691, 697.) We decide this case upon the theory of the defendants in error, plaintiffs below, that prior peaceable possession with

a claim of ownership or right is good as against all the world except the real owner or one holding or claiming under him. In this case, Kellogg & Co. had, as before stated, the actual, quiet, peaceable and exclusive possession of the property with a claim of right thereto, and with the consent of all persons who had any right to interfere with the same. They claimed under chattel mortgages which in terms gave to them the absolute right to the possession of the property, and in this state, as well as at common law, the mortgagee of personal property with a right to the possession thereof holds the legal title. The amounts of Kellogg & Co.'s claims and of the mortgage debt were greater in this case than the value of the property in controversy; and the judgment rendered by the court below was for a less amount than their claim. As the defendants below, Kellogg & Co., had the absolute right to the property, and such defendants had no right thereto; therefore the defendants below are now responsible to Kellogg & Co. for it; while they (Kellogg & Co.) are responsible to Adams, the assignee, for the same, and in the settlement of the estate they must account to him. After the defendants seized the property and took it from the possession of Kellogg & Co., they might have connected themselves with Adams, the assignee, who held the prior right to the property, by turning it over to him or holding it subject to his orders; and this might have been pleaded and proved on the trial in mitigation of damages or to reduce the damages to a mere nominal sum; but nothing of this kind was done. The defendants seized the property in hostility to the rights of all the parties, not only to those of Kellogg & Co., but also to those of the assignee, and they are responsible to Kellogg & Co., and they (Kellogg & Co.) are in turn responsible to Adams, the assignee. We think that, as Kellogg & Co. received the goods in dispute from Adams, the assignee, with his consent, and held peaceable possession thereof, that the recovery by them against Jones will be a bar to another action by the assignee against him. If Adams, the assignee, has failed to discharge his duty, or has improperly

executed his trust by turning over to Kellogg & Co. any property of the insolvent debtor, he is liable upon his official bond. (3 Suth. Dam. 474; Schouler, Bailm. [2d ed.] 54; Story, Bailm. 94; *Luse v. Jones*, 39 N. J. L. 707; *Harrington v. King*, supra.)

The petition of Kellogg & Co., among other things, contains the following allegations:

"And from the time of taking possession of said property, as aforesaid, they, Kellogg & Co., were and remained in the actual and exclusive possession of the same, up to and until the time the goods, chattels and property hereinafter mentioned and described were unlawfully taken from them by the said defendants, as hereinafter set forth; that afterwards, and on or about the 15th day of January, 1887, the said defendants wrongfully, forcibly and unlawfully seized, took and carried away the goods, chattels and property mentioned and described in the schedule hereto annexed, marked 'Exhibit A,' and made a part hereof, the same being a part and portion of the goods, chattels and property hereinbefore described, and conveyed and mortgaged to said plaintiffs as hereinbefore alleged, and wrongfully and unlawfully converted and disposed of the same to their own use, and wholly deprived said plaintiffs of the use, possession and enjoyment of the same. The value of said goods and property so as aforesaid wrongfully taken and converted to their own use by the said defendants, and described in said schedule marked 'Exhibit A,' was, at the time the same were so taken, of the value of $7,000."

A consideration of all the authorities, with the exception of those cited from North Carolina, compels the conclusion, that upon the allegations of the petition referred to, and the findings of fact of the trial court, the theory of the defendants below, that they had a better right to the goods seized, cannot be sustained.

The judgment of the district court will be affirmed.

All the Justices concurring.

NOTE.—The above is the opinion in the case, as corrected upon the rehearing thereof, on the 8th day of April, 1893, at the April sitting of the court.