SHAPLEIGH & RUE, Respondents, v. BAIRD, GARNISHEE, Appellant.

1. Section 39 of the act concerning voluntary assignments (R. C. 1855, p. 210) does not invalidate partial assignments for the benefit of a portion of the creditors of the assignor.
2. Partial assignments still being valid notwithstanding said section, it operates to overthrow all provisions in such assignments which give preferences among the designated creditors.

*Appeal from Cooper Circuit Court.*

At the March term, 1857, of the Cooper circuit court, a judgment was rendered in favor of Marshall Shapleigh and Francis J. Rue, against Henry G. Brent. An execution was issued and William E. Baird was summoned as garnishee. The usual interrogatories were filed. The garnishee answered denying that he had any property, money, &c., of Brent's. To this answer the plaintiffs, Shapleigh and Rue, filed a denial, alleging substantially that Baird was then in possession of a large amount of money as trustee under a certain deed of assignment made by said Brent, in which assignment provision is made for the payment *pro rata* of certain debts due and owing by said Brent to certain of his creditors, but in which deed no provision is made for the payment of the debt due from Brent to said Shapleigh and Rue or any portion thereof. Baird, garnishee, replied admitting that he held property under the deed of assignment as stated, but claimed that said deed of assignment was legal and valid.

An agreed case was made embodying the above facts. The cause was submitted to the court without a jury. The court, at the instance of the plaintiffs in the execution, declared the law to be as follows: " 1. If the deed of assignment made by H. G. Brent, on the —— day of ——, 1857, to William E. Baird as trustee, referred to in the pleadings and set forth in the agreed facts, did in its provisions prefer the payment of certain debts then due certain persons by said Brent, in exclu-

sion of the indebtedness due to plaintiffs (Shapleigh and Rue), and for which judgment was rendered against said Brent at the March term of this court, 1857, then the said assignment made by said Brent is void as to the said plaintiffs, and judgment will be rendered in their favor against the garnishee. 2. If the court find from the evidence and the facts agreed by the parties, that, at the time of making the assignment set forth in the agreed facts, H. G. Brent was justly and legally indebted to Shapleigh and Rue (the plaintiffs in the execution) in the sum of $——, and that no provision was made in said assignment for the payment of said indebtedness or any portion thereof, then, although said assignment may have provided for the payment of the *bona fide* debts of said Brent, yet the same is void as to the plaintiffs, and the assets of said assignment in the garnishee's hands are subject to this garnishment, and the court must find for the plaintiffs in the execution."

Judgment was rendered in favor of the plaintiffs in the execution.

*Adams*, for appellant.

I. The question raised by this record is whether a debtor can, under the laws of this state, make an assignment for the benefit of a portion of his creditors. It is not whether an assignment, made for the benefit of some, would enure to the benefit of all the creditors, but whether an assignment thus made is absolutely void as to the creditors not named therein. The 39th section of the assignment act (R. C. 1855, p. 210) does not make such assignments void. It is the provision or clause of the assignment providing for the payment of one debt in preference to another that is declared void. The assignment, notwithstanding such void clause, is to stand, and all the creditors named or embraced within the assignment are to be paid *pro rata* out of the assets. This is the plain meaning of the section. The legislature did not intend to abridge the right of debtors to make assignments. They still have the right, in the language of the statute, to assign their

property, *or any part thereof*, for the benefit of their creditors, *or any of them*. (See Assignment Act, R. C. 1855, p. 202, § 1.) Previous to the revision of 1855 assignments for the benefit of a portion of the creditors of the assignor have always been recognized as valid. (Gates v. Labeaume, 19 Mo. 238.) The first section clearly recognizes the right of a debtor to make an assignment for the benefit of a part of his creditors. Section 39 does not take away their right. The object of this section was to prevent the classification of the creditors embraced within the assignment, and to compel debtors to place the creditors named or included within the assignment on the same footing. If he will make an assignment for the benefit of a part of the creditors, he can not make preferences amongst them, but all the creditors "within the provisions of the assignment shall be paid *pro rata* from the assets thereof." Even if the debtor should, in violation of the 39th section, classify the debts embraced within the assignment, it would not render the assignment itself void. The assignment would still stand, but the provision classifying the debts would be void, and the whole assets would be paid *pro rata* to the creditors embraced within the assignment. The judgment of the circuit court can stand only upon the assumption that the assignment itself is void as to outside creditors.

An assignment for the benefit of a portion of the creditors of the assignor can not enure to the benefit of all the creditors. An outside creditor can not work himself into an assignment which was never intended for his benefit. There is nothing in section 39 to warrant such an idea. That section speaks only of the creditors within the provisions of the assignment, not such as are outside of the assignment.

*Ryland* and *Stephens & Vest*, for respondents, cited R. C. 1855, p. 210, § 39; Burrill on Assignments, 98, 110, 111; Boardman v. Holliday, 10 Paige, 223; 6 Hill, 438; Webb v. Daggett, 2 Barb. 11; Brown v. Webb, 20 Ohio, 389, 400.)

NAPTON, Judge, delivered the opinion of the court.

The 39th section of the act concerning voluntary assignments (R. C. 1855, p. 210), which was added to this law at the late revision, has given rise to some doubts as to the effect of partial assignments since the passage of the act. This provision has been supposed to invalidate all assignments by a debtor to a portion of his creditors, or at least to make such assignment in effect a general one, so as to let in all the creditors and entitle them to an equal distribution of the property assigned. Previous to the insertion of this section such a construction could hardly have been given to the law. The first section in express terms recognizes the right of a debtor to make a partial assignment embracing only a part of his property or a portion of his creditors. We have not observed in any other section of the act, as it stood before the recent revision, any provision conflicting with this power. It is true, that the general term " creditors" is frequently used in the act, and the phrase is large enough to extend to all the creditors, whether named in the assignment or not; but it is reasonable to infer from the positive language of the first section, as well as the general scope and intent of the law, that this general designation of creditors was meant to be restricted to such as were named in the assignment. To give it a more extensive signification would be repugnant to the express provisions in the first section, which beyond all doubt permit a debtor to limit the benefits of a transfer of his property to such of his creditors as he chooses to name in his assignment.

Was it then the intention of the 39th section to abolish this right and make all assignments, after the passage of the act, operate as general assignments, whether all the creditors are named or not? It will readily occur to any one examining this question, that if such was the intention of the legislature, they have been guilty of a singular oversight in leaving the first section of the act in full force and without even a verbal alteration. To give to the 39th section the construc-

tion insisted on, which virtually puts an end to all partial assignments, we must hold the first section *pro tanto* repealed, for the two sections thus construed are entirely repugnant. The language of the 39th section does not of itself require any construction which will at all conflict with the first section or any other section of the act.

To what extent the legislature may have supposed the remedy provided by the 39th section went, and what particular evils this section may have been designed to cure, it is not important for us to inquire. We perceive an evil which existed under the old law and which this section seems designed to remove, and which, upon a plain literal interpretation, it does remove. It is not our province, because it fails to reach the core of the disease, to undertake its amendment. Allowing partial assignments still to be valid, as they were previously to its enactment, the section abolishes all provisions in such assignments which give preferences among the creditors selected, and requires the assignee to treat such provisions as nullities and distribute the effects *pro rata*. In case of a general assignment of all the debtor's property to all his creditors, which I presume is the usual and common form of such instruments, this section will accomplish every thing that could be desired. It prevents all classification of creditors in such deeds—an evil much complained of, and doubtless within the mind of the legislature. But so long as partial assignments are permitted, and a debtor can transfer his property by such instruments to any portion of his creditors he desires, it is obvious that this section of the revised code of 1855 is totally ineffective to prevent preferences among creditors. The enactment may be always evaded by the selection of a single creditor or any number of creditors sufficient to exhaust the effects assigned. Indeed, if the legislature wish to strike at the root of the evil, they must go back to an old principle of the common law, which permits a debtor to prefer one creditor to another, and which privilege can be effected in a variety of modes other than those referred to in our statutes concerning assignments. Without

however undertaking to suggest any views of our own as to the true policy which should prevail, and how far the legislature might with safety go in the abolition of this ancient principle, it is sufficient that the legislature have not as yet, in our opinion, abolished the right of debtors to make assignments to a portion of their creditors. If any such idea was entertained in the enactment of the 39th section referred to, it is so obscurely hinted at, and at the same time so plainly repugnant to previous provisions permitted to stand in the same statute, that the courts can not enforce it. To repeal a previous law, plain language must be used.

The judgment of the circuit court must be reversed upon any construction of this section. It was certainly not designed to annul the deed of assignment, where it was in other respects valid. The circuit court, in effect, held the deed void, and permitted a creditor outside of the deed to levy his execution upon the property assigned.

All the judges concur in reversing the judgment. Judge Richardson declines giving any opinion upon the proper construction of the 39th section. The cause will be remanded.