THE WATKINS NATIONAL BANK V. J. G. SANDS *et al.*

1. ASSIGNMENT — *Mortgages* — *Preference of Creditors.* Where a deed of assignment and certain mortgages were in contemplation at the same time, and the preparation of all commenced and proceeded together, and all were executed and completed substantially at the same time, the preparation and execution of all must be treated as a simultaneous, continuous and single act, and no preference can be rightfully claimed under the mortgages. (*Hardware Co. v. Implement Co.*, ante, p. 423, followed.)

2. ——— *Not Defeated* — *Good Faith.* In the deed of assignment the conveyance was made in general terms descriptive of all the property of the debtor not exempt by law, and it also contained a provision for the *pro rata* distribution of the proceeds among all the creditors; and it further provided that the conveyance was made subject to the mortgages executed contemporaneously with the deed of assignment. *Held,* That the assignment, having been made in good faith, and in terms so as to convey all the property of the assignor for the benefit of all his creditors, the reference to the mortgages, although inoperative and void, is not of itself sufficient to defeat the assignment.

3. ATTACHMENT — *Discharge.* The testimony examined, and found to be sufficient to sustain the ruling of the court in vacating and discharging an attachment.

### Error from Douglas District Court.

ACTION by the *Bank* against *Sands* and another, on a promissory note. From an order, at the May term, 1889, discharging plaintiff's attachment, it brings error. The opinion states the facts.

*W. J. Patterson,* for plaintiff in error.

*B. J. Horton,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: The Watkins National Bank brought an action against J. G. Sands and C. W. Cherry to recover the sum of $700 upon a promissory note, together with the interest thereon. The plaintiff alleged that Sands had sold, conveyed and disposed of his property, and was about to sell,

convey and dispose of the same with the fraudulent intent to cheat, defraud, hinder and delay his creditors; and upon an affidavit setting forth these grounds an attachment was granted. Subsequently, a motion was made by Sands to dissolve the attachment, and it was alleged that the grounds set forth in the attachment affidavit were untrue. A like motion was made by Richard S. Horton, who stated that at the time the attachment was issued he was the assignee of the defendant J. G. Sands, under a deed of assignment executed and delivered to him. Considerable testimony was submitted upon the application, and the court, after hearing the same, vacated and discharged the attachment, and ordered that the property which had been attached should be delivered to the assignee under the general assignment made by Sands on May 14, 1889. A reversal of that order is sought by this proceeding.

It appears from the testimony that on May 13, 1889, Sands was in an insolvent condition, and determined to make a general assignment for the benefit of his creditors; and on that day he procured a form of assignment to be made, but no assignee was named therein, and it was not executed or acknowledged until the following day. On the 13th, he also prepared and signed certain notes and mortgages, which, however, were not delivered until after the assignment had been perfected. One was a note for $1,000, executed to C. W. Brown, his father-in-law, who resided in New Hampshire, and which was secured by a mortgage on real estate. Another was a note for $416.48, given in favor of the First National Bank of Fredonia, of which his son-in-law was an officer and stockholder; and this he secured by a mortgage on the same real estate. There was still another note, for $1,029.36, made in favor of his son-in-law, M. Abernathy, of Fredonia, and it was secured by a chattel mortgage upon his stock of goods. None of the parties to whom the notes and mortgages were given were present to receive them, nor had they any knowledge of their execution until after the assignment was made. The notes were forwarded through the mails to these parties, at distant towns, on May 14, 1889, and the mortgages

were carried to the office of the register of deeds by R. S.
Horton, after he had agreed to accept the position of assignee,
and only a few minutes preceding the execution of the deed
of assignment. Sands testifies that the deed of assignment
was signed and acknowledged by him only about 15 minutes
to half an hour after the mortgages had been placed in the
hands of the assignee for conveyance to the register of deeds.
The deed of assignment undertakes to convey to R. S. Horton,
the assignee, all the property of Sands, real and personal, of
every nature and description, except such as is exempt under
the laws of the state of Kansas. The instrument contained a
clause reciting that the assignment was made subject to the
three mortgages that have been mentioned.

An examination of the testimony leads us to the conclusion
necessarily reached by the district court, that Sands acted
throughout in good faith and without fraudulent purpose.
The debts which the mortgages were given to secure appear
to be actual and *bona fide*, and the debtor's purpose seems to
have been to devote all his property to the payment of his
debts. If the assignment and mortgages were made in good
faith, and without actual intent to defraud or defeat creditors,
the fact that they were informal or irregular is not alone suf-
ficent to sustain an attachment. While the debts are to be
treated as *bona fide*, and the conveyances as having been made
in good faith, it does not follow that the mortgages are to be
upheld nor that the mortgagees are to be treated as preferred
creditors. It is true, and has frequently been held, that a
debtor in failing circumstances may prefer creditors, so long
as he retains the control and disposition of his property, by
the payment of money or property, or by securing such cred-
itors, providing the payment is made or the security given in
good faith. Such honest preference may be given at any time
prior to the making of an assignment. If, however, the mort-
gages are prepared and executed in connection
with the deed of assignment, and substantially at
the same time, then all should be treated as a single
and continuous transaction, and nothing could be taken under

1. Assignment—
mortgages—
preference of
creditors.

38 — 47 KAS.

the mortgages. (*Hardware Co. v. Implement Co.*, ante, p. 423.) The facts in this case bring it fairly within the cited case. There was a voluntary general assignment by deed containing general terms descriptive of all the property of the debtor not exempt by law; and it also contained a provision for the *pro rata* distribution of the proceeds among all the creditors. All the papers were prepared on May 13, including the notes, mortgages, and form of assignment. The notes were not sent to the payees, nor were the mortgages delivered to them, nor for record, on that day, nor until about the time the assignment was consummated. Sands kept them in his possession after the skeleton deed of assignment was prepared, and until the 14th, "thinking," he said, "it was just possible, even at that late date, that I might change my mind about this as-signment." On the 14th, and while he held the prepared mortgages and deeds of assignment in his possession, he arranged with Horton to act as assignee, and the instrument of assignment was then completed. After Horton had agreed to act as assignee, Sands placed the mortgages in the hands of the assignee, who carried them to the office of the register of deeds. The record discloses that one of the real-estate mortgages was filed for record at 11 o'clock A. M. of that day, and the other two mortgages at five minutes past 11 o'clock of the same day; while the deed of assignment was presented for record at 11:25 o'clock A. M. of that day. Sands admitted in his testimony that the deed of assignment was executed and acknowledged by him between 15 minutes and half an hour after the mortgages had been given to Horton to carry to the office of the register of deeds. Horton, however, was not the agent of the mortgagees, nor were there any representatives of theirs present to accept the instruments, and they cannot be said to have been delivered to anyone at the time of the assignment. In fact, they had no knowledge of their execution until some time after the assignment had been made and the property delivered to the custody of the assignee. It thus appears that all of the conveyances were in contemplation at the same time, the preparation of all commenced and proceeded

together, and, practically, all were executed and completed at the same time. Following the former decision, the preparation and execution of all the instruments must be treated as a simultaneous, continuous and single act; and hence no preference can be rightfully claimed under the mortgages.

The fact that the assignor stated in the deed that it was made subject to the mortgages does not necessarily avoid the conveyance. If the assignor had reserved something which purported to have been conveyed to himself, or if the assignment was otherwise fraudulently made, it might vitiate the whole. The assignment, however, having been made in good faith, and in terms so as to convey all the property of the as-

2. Not defeated— signor for the benefit of all his creditors, the ref-
good faith. erence to the mortgages is of itself insufficent we think to defeat the assignment. In effect, it is a direction to the assignor as to the manner of distributing the assets of the estate. Such a direction or provision is inoperative, as the assignee is controlled by the statute, and not by the wish or direction of the assignor. The statute provides that "every voluntary assignment of lands, tenements, goods, chattels, effects, and credits, made by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors of the assignor, in proportion to their respective claims; and every such assignment shall be proved or acknowledged, and certified and recorded in the same manner as is prescribed by law in cases wherein real estate is conveyed." (Gen. Stat. of 1889, ¶ 342.) In this provision no preferences are allowed, but the assignee is required to distribute the proceeds of the estate among all the creditors of the assignor, in proportion to their respective claims. The provision of statute quoted appears to have been copied from the statute of Missouri, which has been in effect in that state since 1864, and the courts in construing the statute have held that any direction as to the distribution of proceeds or attempted preference will not avoid the assignment, but that the assets of the estate must inure to the benefit of all the creditors. (*Shapleigh v. Baird*, 26 Mo. 326; *Crow v. Beardsley*, 68 id. 435; *Martin v. Hausman*, 14 Fed.

Rep. 160; *Krebs v. Ewing*, 22 id. 693. See, also, *Henderson v. Pierce*, 9 N. E. Rep. 449; Burrill, Assignm., § 352.) The provision incorporated in the deed with reference to the mortgages, by which the assignor prescribed the rule of distribution, and which, if carried out, would operate as a preference, does not conform with the statute, and hence it cannot stand. It may be said of our law, as was said of the Missouri statute, "Nothing in the section indicates that an assignment preferring a portion of the creditors should be void, but the most reasonable construction of the section is that the assignment should stand and inure to the benefit of all." (*Crow v. Beardsley*, supra.) The mortgagees therefore obtain no benefit by virtue of this provision which was incorporated in this deed of assignment, but they may come in with the other *bona fide* creditors and receive payment from the assignee "in proportion to their respective claims." The facts of the case, however, not being sufficient to sustain an attachment, the order of the district court dissolving the same must be affirmed.

3. Attachment— discharge.

All the Justices concurring.