OTTENBERG et al. v. CORNER et al.

(Circuit Court of Appeals, Eighth Circuit. October 5, 1896.)

No. 598.

ASSIGNMENT FOR BENEFIT OF CREDITORS—PREFERENCES—CHATTEL MORTGAGE.
Under the laws of Kansas, a chattel mortgage executed in favor of a creditor in compliance with a demand for security is not invalidated by an assignment for the benefit of creditors, made within a few hours thereafter, the mortgagee having accepted and recorded the mortgage without any knowledge of the mortgagor's intention to make an assignment. Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Kansas.

J. V. Daugherty and R. R. Vermilion (Kos Harris was with them on the brief), for appellants.

F. W. Bentley and David Smyth, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This action was brought by Simon Ottenberg, Henry Ottenberg, and Herman Ottenberg, the appellants, against the Wichita National Bank, W. J. Corner, H. R. Farnum, W. S. Corbett, and W. B. Hanscom, the appellees, to recover from said Wichita National Bank the value of certain property that had come into the possession of the bank, and had subsequently been sold by the bank, and converted to its own use. The bill of complaint alleged, in substance, the following facts: That Simon Ottenberg, Henry Ottenberg, and Herman Ottenberg, who were engaged in business in the city of New York, under the firm name of Simon Ottenberg & Bros., were general creditors of W. J. Corner, H. R. Farnum, and W. B. Hanscom, three of the appellees above named, who were engaged in business at Wichita, Kan., under the firm name of Corner & Farnum; that on July 2, 1891, the firm of Corner & Farnum was in a failing condition, and insolvent; that said last-mentioned firm on said day executed a chattel mortgage covering its entire stock of merchandise, in favor of the Wichita National Bank, to secure an alleged indebtedness of said firm to said bank in the sum of $24,534, and at the same time also executed a deed of assignment, whereby said firm conveyed to W. S. Corbett, one of the appellees, all of its property for the benefit of all of its creditors, the property so conveyed being the same property that was conveyed and described in the aforesaid chattel mortgage. The bill charged, in substance, that the determination to execute both the chattel mortgage and the deed of assignment was arrived at after a consultation had between the firm of Corner & Farnum and the president of the Wichita National Bank; that the intention to execute the mortgage and the deed of assignment was communicated to said bank by Corner & Farnum before either instrument was in fact executed; that the chattel mortgage and the deed of assignment were executed at the same time, and constituted one transaction, the intent being by such device to give the Wichita National Bank a preference over the other creditors of Corner & Farnum. The bill charged, in substance, that the Wichita National Bank had taken possession, under its chattel mortgage, of all the property of Corner & Farnum therein described, and had caused the same to be sold at public and private sale, and had thereby realized a large sum of money, which it had appropriated to its own use; that W. S. Corbett, the assignee named in the deed of assignment, had been requested to bring an action against the aforesaid bank to compel it to account for the money and property by it received, and that he had refused to bring such a suit. In view of the premises, the complainants below, who are now the appellants, prayed that an account might be taken of the property that had been appropriated by the Wichita National Bank under the aforesaid chattel mortgage, and that it be compelled

to pay the value thereof to W. S. Corbett, assignee, to the end that it might be distributed pro rata among all the creditors of Corner & Farnum, pursuant to the laws of the state of Kansas regulating general assignments. The circuit court sustained the validity of the chattel mortgage, but, inasmuch as the proof showed to its satisfaction that the Wichita National Bank had realized out of the property conveyed to it more than enough to satisfy the mortgage debt, it decreed that the bank pay the excess of money in its hands to a special master appointed for that purpose, to the end that it might be distributed by him pro rata among all the creditors of Corner & Farnum who had proved their demands against the assigned estate. The complainants below have appealed from that decree.

One of the questions discussed at considerable length on the hearing of the appeal was whether the assignment that was executed by Corner & Farnum to W. S. Corbett was a valid assignment, the contention on the part of the appellees being that it was invalid, for the reason that it was not signed by W. B. Hanscom, one of the members of the firm of Corner & Farnum. Since the case has been under advisement in this court, the assignment in question has been adjudged to be a good and sufficient conveyance by the supreme court of Kansas in the case of Corbett v. Cannon, 45 Pac. 80, where that was the sole question in controversy. We fully agree with the conclusion announced in that case, and for that reason shall follow the ruling there made, and accept the decision as controlling authority upon the point raised in the case at bar.

The appellants, who are general creditors of Corner & Farnum, found their right to maintain the present action upon the deed of assignment, and, inasmuch as that instrument must be treated as valid, it becomes necessary to determine whether the chattel mortgage which was executed by Corner & Farnum was also a valid conveyance, and operated to create a lien in favor of the Wichita National Bank. The appellants contend that the chattel mortgage was void, because the mortgage and the deed of assignment were executed at the same time, and constituted but one transaction, and because they were so executed, as it is claimed, in pursuance of a previous understanding or agreement between Corner & Farnum and the bank to the effect that the two instruments should be thus executed for the purpose of giving the bank a preference over other general creditors of the assignors. The weight of evidence shows, we think, that the execution and delivery of the mortgage to the mortgagee preceded the execution and delivery of the deed of assignment to the assignee by about two or three hours, so that the two instruments cannot be said to have been executed at the same time. Nevertheless, the execution of the assignment was so closely related to the execution of the mortgage in point of time that it is perhaps fair to infer that Corner & Farnum had in fact resolved to make an assignment when they executed and delivered the chattel mortgage. It is a much more debatable question, however, whether, as is claimed by the appellants, the firm of Corner & Farnum and the Wichita National Bank did in fact agree that the delivery of the mortgage should be followed im-

mediately by the execution of a general assignment, and whether the bank did in fact accept the mortgage with that understanding. With reference to this latter issue the evidence was somewhat conflicting. The trial court evidently found, in accordance with the bank's contention, that it demanded security for its debt from Corner & Farnum, and obtained security in compliance with its demand, and that it was not advised of the mortgagor's purpose to execute a general assignment until some hours after it had accepted and recorded the chattel mortgage. This finding by the trial court upon a disputed issue of fact, depending, as it does, upon the weight of conflicting testimony, is entitled to every reasonable presumption in its favor. This court, and the supreme court of the United States as well, have frequently declared that the findings of a chancellor on an issue of fact should be taken as presumptively correct, and that a decree should be permitted to stand, unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence. Warren v. Burt, 12 U. S. App. 591, 600, 7 C. C. A. 105, and 58 Fed. 101; Gaines' Ex'r v. Granger, 32 U. S. App. 342, 15 C. C. A. 228, and 68 Fed. 69; Paxson v. Brown, 27 U. S. App. 49, 10 C. C. A. 135, 144, and 61 Fed. 874; Snider v. Dobson, 74 Fed. 757; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894; Camden v. Stuart, 144 U. S. 104, 12 Sup. Ct. 585; Crawford v. Neal, 144 U. S. 585, 596, 12 Sup. Ct. 759; Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821. It is also well settled that a decree will not be reversed by an appellate tribunal merely upon a doubt created by conflicting testimony. Philadelphia, W. & B. R. Co. v. Philadelphia & H. D. G. Steam & Towboat Co., 23 How. 209; Morewood v. Enequist, 23 How. 491. Applying these rules to the case at bar, we are unable to say, after an attentive examination of the testimony, that the trial court was mistaken in its view of the evidence, and that it erred in finding, as it appears to have found, that the bank was not privy to the alleged scheme whereby the execution of the chattel mortgage in its favor was to be immediately followed by a deed of assignment. The conclusion which the trial court reached on this branch of the case, that the bank simply demanded security for its debt and obtained it, and that it was not a party to, nor in any way concerned in, the subsequent acts of Corner & Farnum, is not an unreasonable conclusion, when judged in the light of the evidence. The finding of the trial court on this issue is supported by the oral statements of several witnesses, and, so far as we can see, it is not inconsistent with any of the admitted facts or circumstances in the case. For these reasons we think that the presumption which exists in favor of the finding of the trial court has not been overcome, and that such finding should be adopted by this court.

It is contended, however, by counsel for the appellants, that the chattel mortgage was and is void, even though it be true that the bank was not concerned in the execution of the deed of assignment, and was not advised, prior to the delivery of the mortgage, that an assignment was to be executed. It is urged, in substance, that, although the Wichita National Bank may have acted in good faith in

demanding and accepting the chattel mortgage, and without knowledge of the purpose of Corner & Farnum to forthwith execute a deed of assignment, yet, as the members of the firm of Corner & Farnum had both of these conveyances in contemplation at the same time, and executed them on the same day, the chattel mortgage is necessarily void. In support of this contention the following decisions by the supreme court of Kansas are cited and relied upon: Wyeth Hardware Co. v. Standard Implement Co., 47 Kan. 423, 28 Pac. 171; Bank v. Sands, 47 Kan. 591, 28 Pac. 618; Jones v. Kellogg, 51 Kan. 263, 33 Pac. 997. We think, however, that the cases thus cited may be fairly distinguished from the case at bar. In each of the cases to which our attention is directed it appeared that a debtor in failing circumstances, who desired to prefer a particular creditor, of his own volition, and without a previous conference with his creditor, had executed a mortgage in favor of the creditor, and at the same time, as a part of the same transaction, had also executed and delivered a deed of assignment conveying the same property. In each instance the evidence showed that the deed of assignment was delivered to and accepted by the assignee before the mortgage then in question had been delivered to the creditor, and before the creditor had elected to accept it, or was even aware of its existence. Upon this state of facts the court held that the mortgages in question were inoperative and void.

The facts developed in the case at bar are essentially different. The chattel mortgage which is now in controversy was executed and delivered to the creditor before the deed of assignment was either executed or delivered, and before it was known to the creditor that an assignment would be made. The mortgage was also executed in compliance with a demand made by the creditor for such security. It became operative, therefore, from the moment it was delivered to the mortgagee, unless it be held that it was invalid when delivered, and never had any legal operation or effect, because, when delivered, the mortgagor entertained a secret intent, not communicated to the mortgagee, to thereafter execute a deed of assignment. If such an intent on the part of a mortgagor, when carried into execution, will serve to invalidate a mortgage that was executed two or three hours before the execution of a deed of assignment, then we are unable to see why the existence of such an intent should not have the same effect when an assignment is executed two or three days, or even two or three weeks, subsequent to the execution of a mortgage. The federal bankrupt law of March 2, 1867 (14 Stat. 517, c. 176, § 35), did invalidate conveyances by way of preference that were made by an insolvent debtor in contemplation of bankruptcy within a certain period, to wit, four months prior to the execution of an assignment; but no such law exists in Kansas, and, in the absence of a statute upon the subject, the courts cannot say that a mortgage or other security is void, simply because it was executed a few hours or a few days prior to the execution of an assignment for the general benefit of creditors. We think, therefore, that it matters not how short a time may have intervened between the execution of the mortgage and the deed of assignment, if, as we find the fact to be, the mortgage was

executed and delivered, and thereby took effect before the making of the deed of assignment. The transactions were separate and distinct, and took place between different parties. Waggoner-Gates Milling Co. v. Ziegler-Zaiss Commission Co., 128 Mo. 475, 31 S. W. 28, and cases there cited. Moreover, as we construe the decisions cited from the state of Kansas, it has never yet been held in that state that a mere intent on the part of a debtor when he executes a mortgage securing a particular creditor, to thereafter execute a deed of assignment, will have the effect of invalidating the former security, although the mortgagee was ignorant of such intent, and was in no sense a party to the execution of the assignment.

Entertaining these views, we conclude that the decree of the circuit court was for the right party, and it is hereby affirmed.

SANBORN, Circuit Judge (dissenting). May a chattel mortgage upon all their valuable property to secure a pre-existing debt, made by insolvent debtors two hours before they made a general assignment, and after they had resolved to do, so, be sustained under the laws of Kansas, either because the mortgagee pressed the debtor for security, or because it did not know that they intended to make the assignment until after it was made? In support of an affirmative answer to this question the case of Waggoner-Gates Milling Co. v. Ziegler-Zaiss Commission Co., 128 Mo. 473, 31 S. W. 28, is cited. It may be that the mortgage in question in this case could have been sustained if it and the assignment had been made in the state of Missouri, and if they were to be construed and governed by the decisions of the supreme court of that state. But they were not. They were made in the state of Kansas, and their effect and the validity of the chattel mortgage must be determined by the statutes of that state as they have been interpreted by its highest judicial tribunal. The statute of Kansas, under which this assignment was made, provides:

"Every voluntary assignment of lands, tenements, goods, chattels, effects and credits, made by a debtor to any person, in trust for his creditors, shall be for the benefit of all the creditors of the assignor, in proportion to their respective claims." Gen. St. Kan. 1889, c. 6, § 1.

In Waggoner-Gates Milling Co. v. Ziegler-Zaiss Commission Co., supra, the supreme court of the state of Missouri declared that it had been repeatedly held in states having assignment statutes similar to those in Missouri and Kansas, where an insolvent debtor had executed different mortgages on all his property, when he intended at the same time to make, and shortly thereafter did make, an assignment subject to such mortgages for the benefit of all of his creditors, that the mortgages and the assignment were one and the same transaction, and that the mortgages were void. Among the decisions which it cited as sustaining this proposition are Wyeth Hardware Co. v. Standard Implement Co., 47 Kan. 423, 28 Pac. 171; Bank v. Sands, 47 Kan. 591, 28 Pac. 618; Jones v. Kellogg, 51 Kan. 263, 33 Pac. 997; Preston v. Spaulding, 120 Ill. 208, 10 N. E. 903; Van Patten v. Burr, 52 Iowa, 518, 3 N. W. 524; Ellison v. Moses, 95 Ala. 221, 11 South. 347; Holt v. Bancroft, 30 Ala. 193; Bank v. Bard,

59 Hun, 529, 13 N. Y. Supp. 688; Berger v. Varrelmann, 127 N. Y. 281, 27 N. E. 1065; Peed v. Elliott, 134 Ind. 636, 34 N. E. 319; Berry v. Cutts, 42 Me. 445. After citing these decisions, the supreme court of the state of Missouri announced that there were a large number of authorities of equal merit which held to a contrary view, and that among the latter class were those of the state of Missouri. An examination of the cases in the supreme courts of Kansas and Missouri which involve this question has convinced me that this is a correct statement of the standing of the decisions of the highest courts of those states upon this issue. If this be so, this court ought not to be governed, in determining the validity of this chattel mortgage, by the decisions of the supreme court of Missouri, but by those of the highest judicial tribunal of Kansas. Upon this subject the supreme court of the United States said in a recent case:

"The question of the construction and effect of a statute of a state regulating assignments for the benefit of creditors is a question upon which the decisions of the highest court of the state, establishing a rule of property, are of controlling authority in the courts of the United States. Brashear v. West, 7 Pet. 608, 615; Allen v. Massey. 17 Wall. 351; Lloyd v. Fulton, 91 U. S. 479, 485; Sumner v. Hicks, 2 Black, 532, 534; Jaffray v. McGehee, 107 U. S. 361, 365, 2 Sup. Ct. 367; Peters v. Bain, 133 U. S. 670, 686, 10 Sup. Ct. 354; Randolph's Ex'r v. Quidnick Co., 135 U. S. 457, 10 Sup. Ct. 655. The decision in White v. Cotzhausen, 129 U. S. 329, 9 Sup. Ct. 309, construing a similar statute of Illinois in accordance with the decisions of the supreme court of that state as understood by this court, has, therefore, no bearing upon the case at bar. The fact that similar statutes are allowed different effects in different states is immaterial. As observed by Mr. Justice Field, speaking for this court: 'The interpretation within the jurisdiction of one state becomes a part of the law of that state, as much so as if incorporated into the body of it by the legislature. If, therefore, different interpretations are given in different states to a similar local law, that law, in effect, becomes, by the interpretations, so far as it is a rule for our action, a different law in one state from what it is in the other.' Christy v. Pridgeon, 4 Wall. 196, 203. See, also, Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012." Chicago Union Bank v. Kansas City Bank, 136 U. S. 223, 235, 10 Sup. Ct. 1017.

The very different effect which similar transactions have, under the opposing decisions of the courts of different states upon the validity of chattel mortgages, executed after the mortgagor has resolved to make a general assignment, and at about the same time that he makes it, is well illustrated by the case just cited, which is based on the decisions in Missouri, and in the case of White v. Cotzhausen, 129 U. S. 329, 9 Sup. Ct. 309, which rests upon the rulings of the supreme court of Illinois. In the former case preferences are sustained that would have been avoided, if they had been given in Illinois, and in the latter case those are avoided that might have been sustained under the decisions in Missouri. Now, the decisions of the supreme court of the state of Kansas upon the question under consideration are in accord with those of the supreme courts of Illinois, Iowa, Maine, and New York. As I understand them, they do not rest upon the proposition that preferences made by an insolvent debtor, after he has resolved to make an assignment, are void because he or his preferred creditors intended thereby to hinder, delay, or defraud his other creditors. They rest on the ground that such pref-

erences·in themselves constitute a ·violation of· the letter and spirit of that provision of the assignment law which requires the assigned property to be distributed pro rata among all the creditors of the insolvent. This provision is as much violated when preferred creditors are ignorant as when they are aware of the intention of the debtor to immediately follow their preferences with an assignment. It is as much violated when they have urged the insolvent to give them the securities as when he has done so voluntarily. It is as much· violated when he gives the preferences, and they accept them in good faith, with the intent that the preferred creditors shall thereby secure the payment of their bona fide claims, as when the debtor· and the creditors intend to delay the unsecured creditors. The question under this statute is not, what was the knowledge or the intent of the secured creditors? It is not whether the debtor or the creditors intended by the preferences to hinder, delay, or defraud unsecured creditors, but the only question is, did the insolvent debtor contemplate, and intend to make, the assignment, when he was making the preferences? Did he intend to dispose of his property when he entered upon the transaction by the use of the instruments which gave the preferences and the assignment which immediately followed them? As Judge Love well said in deciding in the court below the case of Lumber Co. v. Ott, 142 U. S. 622, 630, 12 Sup. Ct. 318, 321, "The intention of the assignor must be the true and guiding principle of decision." A careful reading of the opinions of the supreme court of Kansas has led me to the conclusion that a chattel mortgage in that state cannot be sustained under those decisions either on the ground that the mortgagee was ignorant that the mortgagors had ·resolved to make a general assignment when they made the mortgage, or on the ground that the mortgagee had urged them to give the securities. In Wyeth Hardware Co. v. Standard Implement Co., 47 Kan. 423, 28 Pac. 171, and in Bank v. Sands, 47 Kan. 591, 28 Pac. 618, the mortgagors made the mortgages just before making the assignments. The preferred creditors had no notice or knowledge that the mortgagors intended to make general assignments, and they had not pressed them for payment of their debts, nor asked for security, and yet the mortgages were set aside by the supreme court of Kansas. That they were not void on the ground that such preferences were made with intent to hinder, delay, or defraud creditors is demonstrated by the fact that the court found in the latter case that the debts secured were actual, that the mortgages and the assignment were made in good faith, and that for this reason an attachment could not be sustained on the ground that the debtor intended to hinder, delay, or defraud his creditors; and yet it held that the mortgages were void, that they gave no preferences, and that the proceeds of· the property must be distributed pro rata among all the creditors under the assignment. 47 Kan. 593, 28 Pac. 619. In Jones v. Kellogg, 51 Kan. 263, 274, 33 Pac. 997, 999, the creditors who procured one of the chattel mortgages upon the property of the debtor presented their claim to him, and demanded payment of it, or security for it, on November 17, 1886, and the debtor promised to give the security in case of any trouble. On November 29, 1886, he·

made a chattel mortgage to secure this claim, and followed it with a general assignment, which he made on the same day. The supreme court of Kansas held that the mortgage was voidable. The opinion discloses the fact that an attempt was made in that case to distinguish it from the cases cited from 47 Kan. and 28 Pac., on the ground suggested in the opinion of the court in this case, namely, that the mortgage was not voluntarily given. The court answered this argument in these words:

"It is claimed by the defendants in error, plaintiffs below, that the mortgage given to Charles P. Kellogg & Co. was not given by Townley of his own volition, and unsolicited, as were the mortgages mentioned in the cases above cited, but were given because of importunities, demands, and active vigilance on the part of Charles P. Kellogg & Co., through their agents, in attempting to collect their claim, or to obtain security thereon, and because of a promise on the part of Townley, the debtor, made several days before the execution of the mortgage, and before the assignment was contemplated, to give security upon the claim if trouble should arise. These things are not thought by this court to be material, however, for the reason, among others, that no intention was really formed by Townley to execute any mortgage to Charles P. Kellogg & Co. until the intention was also formed by him to execute a general deed of assignment for the benefit of all his creditors. When the mortgage was executed, it was not the carrying out of an agreement previously entered into between the parties, upon a new and sufficient consideration passing at the time when the agreement was made, and an agreement intended to be fulfilled by one of the parties in executing a mortgage to the other, but it was simply the carrying out of an intention formed at the very time that another intention was also formed, to execute a general deed of assignment. It does not appear that anything was said prior to this time with regard to mortgages, or that any new consideration passed for the mortgages; hence, as before stated, the mortgages must be considered as void." 51 Kan. 278, 33 Pac. 1000.

In view of these decisions and the rule of the supreme court of the United States that they constitute the law of the state of Kansas, which the national courts are bound to enforce, I am of the opinion that the chattel mortgage in this case should be set aside, and the judgment which sustains it should be reversed.