SANBORN, Circuit Judge.
This was an action for the recovery of the possession of specific real property, and the writ of error challenges a judgment in favor of Lewis S. Reed, the defendant in error, who was in possession. The Union Pacific Railway Company, the plaintiff in error, had never been in possession of the premises, but relied upon its legal title and its right of possession thereunder for a •recovery. In the pleadings upon which the case was tried, each party claimed the title, and the only question at issue at the close of the trial was whether or not the railway company had proved any title to the demanded premises in itself. That question is presented here upon this state of facts, which was found by the court below, after a trial without a jury: Samuel Frodsham owned the land in controversy on February 23, 1857. The railway company could not prove the original of a power of attorney to sell and convey this land made by him to one Birkett, a record of which, under the date of May 25, 1858, was found in the register’s office of the county in which the land was situated, and it offered in evidence a certified copy of that record. This copy disclosed the fact that the acknowledgment of the instrument was taken and certified in the state of Missouri by the mayor of the city of Savannah, in that state, and that there was no certificate attached to it, made by the clerk or other proper certifying officer, that the signature of the mayor was genuine, or that the instrument was executed or acknowledged according to the laws of the state of Missouri. The plaintiff then introduced in evidence the record of a deed of the premises by Birkett, as attorney in fact of Frodsham, under this power of attorney, to one Davis. This deed was dated and recorded on May 22, 1858. It then deraigned its title from Davis, and also introduced in evidence a deed dated February 19, 1894, from Frodsham and his wife to itself, in which the grantors recited, ratified, and confirmed the power of attorney to Birkett and the deed from him to Davis, and conveyed the land to the railway company. The defendant proved that Frodsham made a deed of the land to one Van Wyck on May 23, 1857, and that this deed was duly recorded on the same day; but the plaintiff, in rebuttal, introduced *236 evidence that this deed was in fact a mortgage, and that Yan Wyck had never paid any taxes or exercised any acts of ownership over the property. The defendant also proved that on June 24, 1882, Frodsham made a deed of all his right, title, and interest in the land to one Jones, for the consideration of $10, and that on July 23, 1883, Jones conveyed the land by a quitclaim deed to the defendant Reed, who was then in possession. Other facts were found by the court below, but none of them strengthen the title of the plaintiff, or affect the decisive issue in the case.
A plaintiff in ejectment must recover on the strength of his own title, and not on the weakness of his adversary’s. The defendant in this case has been in possession of the premises in dispute for many years, and the plaintiff was never in possession. The only question, therefore, upon the facts found, is whether or not the plaintiff has established a legal title in itself. The briefs and arguments in this case devote much space and timé to a consideration of the legal effect of .the evidence relative to the deed from Frodsham to Van Wyck in 1857. Counsel for the plaintiff in error insist that it did not show any outstanding title, and that, at most, it was only a mortgage, which did not convey the legal title. ' In our view of this case, it is unnecessary to consider any of these questions, and we lay them aside. The case of the railway company cannot be stronger than it would have been if that deed had never been made, and we will consider and dispose of it upon that assumption. We also lay out of the case the deed of 1894, from Frodsham and wife to the plaintiff, because this is a question of title, and that deed could not by any possibility have conveyed any title to the property. If the deed from Frodsham to Davis, in 1858, conveyed the title, it had passed through Davis to the plaintiff long prior to 1894. If the deed to Davis did not convey the title, then it was vested in Frodsham in 1882, and his quitclaim deed of all his right, title, and interest in the land to Jones on June 24th of that year conveyed it to Jones, and it passed through him to the defendant. When this deed was made, in 1894, Frodsham had no title or interest in the property. The title was either in the railway company or in Reed, and no act of attempted ratification or conveyance by Frodsham could affect the title of either. Cook v. Tullis, 18 Wall. 332, and cases cited.
The crucial question in the Case, therefore, is whether or not the deed to Davis conveyed the title of Frodsham, and that depends on the sufficiency of the proof that Birkett had a power of attorney from Frodsham to make the deed; for it was not made by Frodsham himself, but by Birkett, as his attorney in fact. The only proof of that power was a certified copy of its record in the office of the register of deeds of Douglas county. Neb., where it appears to have been recorded on May 25, 1858. The competency of this copy depends on the provisions of the statutes of Nebraska, for a lost instrument cannot be proved by a certified copy of its record, in the absence of a statute which expressly authorizes the admission of such evidence. The statutes of Nebraska in force at the time when this power of attorney purports to have been executed and recorded provided that, unless the acknowledgment of such an instrument without the territory of *237 Nebraska was taken before a commissioner appointed by the governor of the territory for that purpose, it should have attached thereto “a certificate of the clerk or other proper certifying officer of a court of record of the 'county or district within which it was taken, under the seal of his office, that the person whose name is subscribed to the certificate of acknowledgment or proof was at the date thereof such officer as he is therein represented to be, that he is well acquainted with the handwriting of such officer, and that he believes the signature of such officer to be genuine, and that the deed is executed and acknowledged, or proved according to the laws of such state or territory” (Sess. Laws Neb. 1856, p. 241, c. 31, § 5; Laws Neb. 1855, p. 245, § 56); that the certificate of acknowledgment and the certificate provided for by section 5, supra, should be recorded together with the instrument; and that, unless so recorded, neither the record nor the transcript thereof should be received in evidence; and that deeds •should not be deemed lawfully recorded unless they had been previously acknowledged or proved in the manner provided in that chap-' ter (Sess. Laws Neb. 1856, c. 31, §§ 14, 17). Section 23 of the same •chapter provided that “it shall be no objection to the record of a deed that no official seal is appended to the recorded acknowledgment or proof thereof if, when the acknowledgment or proof purport to have been taken by an officer having an official seal, there be a statement in the certificate of acknowledgment or proof that the same is made under his hand and seal of office, and the records show by a scroll or otherwise that there was such a seal, which shall be presumptive •evidence that the official seal was attached to the original certificate.” In 1887 the legislature of the state of Nebraska amended certain sections of their statutes relative to the execution and acknowledgment •of deeds, and enacted that “all deeds heretofore executed and acknowledged in accordance with the provisions of this act shall be and are hereby declared to be legal and valid.” Laws Neb. 1887, p. 562, c. 61, § 4. The statutes in force at the time of the trial provided that the certificate of the proof or acknowledgment of every instrument affecting real estate, and the certificate of the genuineness of the signature of any officer, in cases where such certificate was required, should be recorded together with the deed so proved or acknowledged, and that, unless the said certificates were so recorded, neither the record of the instrument nor the transcript thereof should be read or received in evidence, but that the record of an instrument duly recorded, or a transcript thereof, might be read in evidence, with the like force and effect as the original instrument, whenever the original was known to be lost, or did not belong to the party wishing to use the same, or was not within his control. Consol. St. Neb. 1891, §§ 4337, 4338.
A glance at these provisions of the statutes is sufficient to show, not only that they fail to authorize the introduction in evidence of a •certified copy of the record of the power of attorney in question, but that they expressly prohibit its introduction. Sections 5, 14, 17, c. 31, Laws Neb. 1856. They made the certificate of the proper certifying officer that the person whose name was subscribed to the certificate of acknowledgment was the mayor of Savannah, that his signa *238 ture was genuine, and that the power of attorney was executed and acknowledged according to the laws of Missouri, and the record of this certificate with the power of attorney, conditions precedent to the right to record this power at all. They made such' a certificate and the record of it prerequisites to the right to record any instrument affecting real estate, which was acknowledged without the territory before any other officer than a commissioner appointed by the governor of Nebraska; and this instrument was not acknowledged before such a commissioner. The power of attorney had no such certificate attached to it. Section 4338, Consol. St. Neb. 1891, which was in force during the trial of this case, provided that the certificate of the genuineness of the signature of an officer, where such certificate was required, should be recorded with the instrument acknowledged, and that, unless it was so recorded, neither the record of the instrument, nor the transcript thereof, should be read or received in evidence. The conclusion is irresistible that the power of attorney was never-entitled to record, and that neither the record of it nor the certified copy of that record, which was offered in evidence, constituted any legal proof of its existence. Prentice v. Forwarding Co., 19 U. S. App. 100, 115, 116, 7 C. C. A. 293, 302, and 58 Fed. 437; Morton v. Smith, Fed. Cas. No. 9,867; Lowry v. Harris, 12 Minn. 255 (Gil. 166); O’Brien v. Gaslin, 20 Neb. 347, 30 N. W. 274; Greenwood v. Jenswold, 69 Iowa, 53, 28 N. W. 433; Ely v. Wilcox, 20 Wis. 523, 526; Fisher v. Vaughn, 75 Wis. 609, 615, 44 N. W. 831, 833.
It is strenuously argued by counsel for plaintiff in error that section 23 of chapter 31, supra, which provides that it shall be no objection to the record of a deed that no official seal is appended to the recorded acknowledgment, if there is a statement in the certificate of acknowledgment that it is made under the hand and seal of office of the person who took the acknowledgment, and the records show, by a scroll or otherwise, that there was such a seal, relieves the copy of the record of this power of attorney of the objection we have been considering. But the only effect of that section was to relieve the record of certain instruments affecting real estate from the objection that the-official seal of the officer taking the acknowledgment did not appear-thereon. It had the effect to relieve the record of the objection that the official seal of the mayor of the city of Savannah did not appear upon the face of the page on which it was recorded. That is not the-objection to this evidence which we have been considering. The objection is not that the official seal of the mayor of the city of Savannah-does not appear upon the record, but that the certified copy of that record is no evidence, under the statutes, that the power of attorney there recorded ever existed. No number of official seals would relieve the certified copy of this objection, while the certificate of the genuineness of the signature of the mayor, and of the execution and acknowledgment of the power according to the laws of the state of Missouri, was still wanting.
It is also contended that the want of this certificate is cured by the-amendment found in section 4 of chapter 61 of the Laws of Nebraska of 1887, to the effect that all deeds theretofore executed and acknowledged, in accordance with the provisions of that act, should be, and' *239 were thereby declared to be, legal'and valid. But the objection here is not that this power of attorney was not legal and valid. It is that there is no competent evidence in this record that there ever was any such power. The act of 1887 does not affect the objection. It does not provide that the unauthorized record of this instrument in 1858 should become a legal or sufficient record, nor that a certified copy of that record should become evidence of the original power of attorney in the teeth of the express prohibition of the use of such evidence, by section 14 of chapter 31 of the Session Laws of Nebraska of 1856, and by section 4338 of the Consolidated Statutes of Nebraska of 1891. The act of 1887 has no effect upon the question at issue in this case. The difficulty with the plaintiff’s case is that, when the trial closed, it had introduced no competent evidence that there was a power of attorney from Prodsham to Birkett, and the case stood as though no> such power had ever been given, and as though the deed to Davis under that power had never been made. In this state of the proof, the evidence was that the title remained in Prodsham until 1882, when it passed to Jones, and through him to the defendant, Seed.
The statutes that have been under examination are too plain for construction. If they were not, the highest judicial tribunal of the state of Nebraska has repeatedly interpreted them, and has reached the same conclusion at which we have arrived. O’Brien v. Gaslin, 20 Neb. 347, 30 N. W. 274; Hoadley v. Stephens, 4 Neb. 431; Irwin v. Welch, 10 Neb. 479, 6 N. W. 753; Trust Co. v. Reiter, 66 N. W. 658, 663. These decisions constitute a rule of property in the state of Nebraska, and are of controlling authority in the national courts. The construction by the highest judicial tribunal of a state of its constitution or statutes, which establishes a rule of property, is controlling authority in the courts of the United States, where no question of right under the constitution and laws of the nation, and' no question of general or commercial law, is involved. Brashear v. West, 7 Pet. 608, 615; Allen v. Massey, 17 Wall. 351; Lloyd v. Fulton, 91 U. S. 479, 485; Sumner v. Hicks, 2 Black, 532, 534; Jaffray v. McGehee, 107 U. S. 361, 365, 2 Sup. Ct. 367; Peters v. Bain, 133 U. S. 670, 686, 10 Sup. Ct. 354; Randolph’s Ex’r v. Quidnick Co., 135 U. S. 457, 10 Sup. Ct. 655; White v. Cotzhausen, 129 U. S. 329, 9 Sup. Ct. 309; Chicago Union Bank v. Kansas City Bank, 136 U. S. 223, 235, 10 Sup. Ct. 1013; Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012; Madden v. Lancaster Co., 27 U. S. App. 528, 535-537, 12 C. C. A. 566, 570, and 65 Fed. 188, 192; Ottenberg v. Corner, 40 U. S. App. 320, 22 C. C. A. 163, and 76 Fed. 263, 269. The judgment below must be-affirmed, with costs, and it is so ordered.